FILED
NOVEMBER 5, 2007
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**07 C 6263**

| | |
|---|---|
| VULCAN LANDS, INC., a New Jersey Corporation,<br><br>Plaintiff,<br><br>vs.<br><br>CHICAGO TITLE AND TRUST CO. as t/u/t/a 1097435 dated April 14, 1992, JOHN SHAW, and UNKNOWN OWNERS AND BENEFICIARIES,<br><br>Defendants. | Case No.: |

**JUDGE COAR
MAGISTRATE JUDGE COLE**

### COMPLAINT FOR DECLARATORY RELIEF

NOW COMES Plaintiff, VULCAN LANDS, INC, by and through its attorneys, Bruce L. Goldsmith and Kimberly D. Fahrbach of DYKEMA GOSSETT PLLC, and complaining of Defendants, CHICAGO TITLE AND TRUST CO. as t/u/t/a 1097435 dated April 14, 1992, JOHN SHAW, and UNKNOWN OWNERS AND BENEFICIARIES states:

### ALLEGATIONS COMMON TO ALL COUNTS

1. Plaintiff VULCAN LANDS, INC. (hereinafter referred to as "VULCAN") is a New Jersey domiciled corporation, with its headquarters located in Jefferson County, Alabama.

2. Defendants CHICAGO TITLE AND TRUST CO. as t/u/t/a 1097435 dated April 14, 1992, JOHN SHAW, unidentified members of the family of JOHN SHAW, and UNKNOWN OWNERS AND BENEFICIARIES of trust 1097435 and JOHN SHAW (hereinafter collectively referred to as "SHAW") are Illinois residents, the trust being the legal owner and John Shaw and various family members being the beneficial owners of certain property described in Exhibit A (hereinafter referred to as "the Shaw Property.")

3.     VULCAN owns a parcel of land (the "Vulcan Property") consisting of approximately 234 acres in Lisbon Township, Kendall County, Illinois, a portion of which it plans to develop into a new limestone quarry site. (The legal description of VULCAN's parcel is attached as Exhibit B to this Complaint.)

4.     The Shaw Property consists of approximately 385 acres in Lisbon Township, Kendall County, Illinois. SHAW currently owns and operates Central Limestone, Co., Inc., which leases the Shaw Property for a limestone quarry operation. (See Ex. A.)

5.     Both the Vulcan Property and the Shaw Property are located in Section 28, Township 35 North, Range 7 East of the Third Principal Meridian (generally referred to as "Section 28") and are on opposite sides and abut Joliet Road. (See Ex. C, Map.) Joliet Road runs through Section 28. (See Ex. C, Map.)

6.     Since 1964, SHAW has possessed all of the land that abuts Joliet Road to the south in the southwest quarter of Section 28 (hereinafter referred to as the "South Tract").

7.     Since August 21, 2006, VULCAN has possessed the land north of Joliet Road and in the northwest quarter of Section 28 (hereinafter referred to as the "North Tract").

8.     This dispute concerns a piece of property located north of Joliet Road and south of the half section line of Section 28 (hereinafter referred to as the "East-West Section Line"). (For the sake of brevity, this piece of property will hereinafter be referred to as the "SUBJECT PROPERTY.") (See Ex. C, Map.)

## JURISDICTION AND VENUE

9.     This Court has subject matter jurisdiction of this civil action pursuant to 28 U.S.C. § 1332(a), in that the amount in controversy, i.e. the value of the SUBJECT PROPERTY and the appurtenant rights of access associated with the Subject Property, exceeds the sum or value of $75,000, exclusive of costs and interest, and there exists complete diversity between the parties.

10. Personal jurisdiction is proper in Illinois because the SUBJECT PROPERTY is located in Illinois and jurisdiction would be permitted in Illinois pursuant to 735 ILCS 5/2-209(c).

11. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(a)(3) because the SUBJECT PROPERTY giving rise to VULCAN's claims lies in this district.

## HISTORY OF CONVEYANCES

12. In 1958 William S. Hall, Frank M. Hall, and/or Shirley L. Hall (collectively "Halls") owned most of the land currently referred to as the North Tract and South Tract, including the SUBJECT PROPERTY, and including the land where Joliet Road is currently located.

13. Prior to 1958, the fee to Joliet Road was owned by the Halls, but the public had use of the road by prescriptive easement.

14. In 1958 the Halls entered into an agreement with Kendall County wherein the Halls conveyed easements for highway purposes to the County for Joliet Road pursuant to deeds (hereinafter referred to "1958 Hall Deeds"). (See Ex. D, 1958 Hall Deeds.)

15. The 1958 Hall Deeds conveyed those portions of a 70 foot strip along Joliet Road that were not previously used for roadway purposes by prescription, in order to widen the right of way of Joliet Road to 70 feet.

16. The Hall Deeds described the amount of land granted to the County for the easement as follows:

> "A strip of land along a portion of **half section line of sec. 28,** twp. 35 N., R. 7E, of 3rd P.M. in Kendall County from Sts. 120 + 21 to Sts. 132 + 72 said strip being **of a uniform width of 70 ft. one half lying North and one half lying South of the centerline of Roadway Improvement.**" (See Ex. D, 1958 Hall Deeds (emphasis added)).

3

17. Thereafter, Kendall County widened the pavement of Joliet Road and continued to maintain Joliet Road in the location Joliet Road is shown on the map. (See Ex. C, Map.) Various utilities have also placed service within the Joliet Road right of way, with utility poles or other utility services located just inside the right of way limits.

## OWNERSHIP OF NORTH TRACT

18. By 1968 William C. Peart and/or Nora Peart and other Peart family members (hereinafter collectively referred to as "the Pearts") owned all of the land referenced herein as the North Tract.

19. The deeds of conveyance concerning the North Tract described the property being conveyed as the northwest quarter of Section 28.

20. Upon purchasing the northwest quarter of Section 28, the Pearts believed that they were buying all of the land north of the center line of Joliet Road and that the center line of Joliet Road served as the southern boundary of their property and was the same as the East-West Section Line.

21. Upon obtaining legal title to the North Tract, the Pearts used the entire North Tract for a home and a farm.

22. On information and belief, the Pearts or prior owners of the North Tract established a fence line approximately 35 feet north of the center line of Joliet Road, to establish the boundary of their property north of the roadway.

23. Between 1968 and 2006 the Pearts utilized the center line of Joliet Road as the southern boundary of the North Tract and the southern boundary of their property.

24. Between 1968 and 2006 the Pearts continually possessed all land on the North Tract in association with their homestead and farm, including the SUBJECT PROPERTY.

25.  Between 1968 and 2006 the Pearts paid all real estate taxes assessed on the North Tract, including taxes assessed on the SUBJECT PROPERTY.

26.  Between 1968 and 2006 the Pearts used the North Tract, including the SUBJECT PROPERTY, in a manner consistent with farming and running a homestead.

27.  In 2006 the Pearts sold their interest in all of the land included in the Vulcan Property, including the North Tract, to VULCAN.

28.  VULCAN has paid all real estate taxes assessed on the North Tract, including the SUBJECT PROPERTY, since 2006, and has continued farming operations and homestead on the SUBJECT PROPERTY.

29.  VULCAN has continually possessed the North Tract, including the SUBJECT PROPERTY, since 2006, and has continued farming operations and homestead activities on the SUBJECT PROPERTY.

30.  VULCAN intends to develop a limestone quarry on the North Tract, including the SUBJECT PROPERTY.

## OWNERSHIP OF SOUTH TRACT

31.  By 1964 SHAW owned all of the land that abutted Joliet Road in the South Tract.

32.  Since 1964, SHAW has leased portions of the South Tract for the operation of a limestone quarry.

33.  Upon information and belief, in 1971 SHAW had a survey prepared on his land.

34.  Upon information and belief, the 1971 survey revealed that, although previous deeds (such as the 1958 Hall Deeds) described the East-West Section Line to be the same as the center line of Joliet Road, the center line of Joliet Road was actually south of the East-West Section Line.

5

35. Upon information and belief, the 1971 survey revealed that the East-West Section Line was approximately 40 feet north of the center line of Joliet Road.

36. The deeds conveying portions of the South Tract to SHAW mistakenly utilized the East-West Section Line of Section 28 to describe the northern boundary of the South Tract.

37. Due to the erroneous use of the East-West Center Line of Section 28 in the deeds as opposed to the center line of Joliet Road to identify the northern boundary of the South Tract, the South Tract was erroneously described in the deeds as including land north of the center line of Joliet Road (i.e., land located in the North Tract).

38. The parcel of land that is located north of Joliet Road and south of the East-West Section Line of Section 28 is the aforementioned SUBJECT PROPERTY.

39. Despite the 1971 survey's disclosure of a discrepancy as to the northern boundary of the South Tract (i.e., the center line of Joliet Road versus the East West Section Line of Section 28), SHAW did not claim ownership of the SUBJECT PROPERTY.

40. At no time, including after the 1971 survey, has SHAW taken possession of any of the land located in the North Tract, including the SUBJECT PROPERTY.

41. Upon information and belief, at some point SHAW or predecessors in title constructed a fence south of Joliet Road that ran east to west parallel with Joliet Road and along the whole length of the South Tract adjacent to Joliet Road. This fence is approximately 35 feet south of the centerline of Joliet Road and is at the south boundary of the roadway easement for Joliet Road granted by the Halls to the County.

42. The fence served to put the community on notice that SHAW was claiming possession of all of the land in the South Tract south of the fence and that the fence marked the northern boundary of the South Tract, except for any rights SHAW had in the roadway.

6

## THE SUBJECT PROPERTY

43. SHAW has never been assessed taxes for the portion of the North Tract comprising the SUBJECT PROPERTY.

44. SHAW has never paid taxes on any land located in the North Tract, including the SUBJECT PROPERTY.

45. Since 1964 VULCAN and the preceding owners of the North Tract, the Pearts, maintained continuous possession of all land located in the North Tract, including the SUBJECT PROPERTY, by conducting certain activities on the SUBJECT PROPERTY, including, but not limited to, farming the land, occupying a homestead on the land, mowing the grass, using access roads across it to Joliet Road, and otherwise maintaining it.

46. Between 1964 and 2006 the Pearts possessed all of the land located in the North Tract, including the SUBJECT PROPERTY, in a manner so that the community could be apprised of the Pearts' possession and exclusive use and enjoyment of the property.

47. Since acquiring the North Tract in 2006 VULCAN has possessed all land located in the North Tract, including the SUBJECT PROPERTY, in a manner so that the community could be apprised of VULCAN'S possession and exclusive use and enjoyment of the property.

48. Since 1964 SHAW has never possessed nor maintained any land located in the North Tract, including the SUBJECT PROPERTY, in any form so that the community could become aware that SHAW was claiming ownership and possession of the SUBJECT PROPERTY.

49. After receiving the results of the 1971 survey, SHAW did not intervene or perform any act that interfered with the then-owners of the North Tract's possession of the SUBJECT PROPERTY.

LISLE\100324.7
ID\KDF

50. Since 1968 Vulcan and the Pearts' possession of the SUBJECT PROPERTY has been inconsistent with SHAW's assertion of any ownership of the SUBJECT PROPERTY.

51. Specifically, SHAW has leased the South Tract for use by Central Limestone as a quarry, and the Pearts utilized the North Tract, including the SUBJECT PROPERTY, as farmland and a homestead.

### COUNT I – MUTUAL MISTAKE

52. Shaw assembled the South Tract through a series of purchases over a period of years. On information and belief, each time SHAW executed a contract for purchase of land that abutted Joliet Road, SHAW intended to purchase and the respective sellers intended to sell land located only south of the center line of Joliet Road.

53. On information and belief, each time SHAW executed a contract for purchase of land for the assemblage of the South Tract that included land abutting Joliet Road, the respective seller(s) did not intend to sell and SHAW did not intend to purchase any land located north of the center line of Joliet Road, including the SUBJECT PROPERTY.

54. On information and belief, each time SHAW purchased land contained in the South Tract, SHAW and the sellers understood that the South Tract would be bordered to the north by the center line of Joliet Road.

55. On information and belief, each time the Pearts and/or their predecessors executed a contract for purchase of land contained in the North Tract, the Pearts intended to purchase and the respective sellers intended to sell land that was bordered on the south by the center line of Joliet Road.

56. Despite the intention of SHAW and the Pearts and their predecessors and the respective seller(s) at the times they executed the contracts for the purchase of land contained in

8

the South Tract and North Tract respectively, the premises intended to be conveyed were erroneously described in the deeds.

57. Specifically, the legal descriptions in the deeds mistakenly referenced the north boundary of the South Tract as the East-West Section Line of Section 28, instead of the center line of Joliet Road and/or the south boundary of the North Tract as the East West Center Line of Section 28 instead of the center line of Joliet Road.

58. The effect of the references to the East West Section Line of Section 28 instead of the center line of Joliet Road was that the legal description of the land being conveyed mistakenly included (in the case of the South Tract) or excluded (in the case of the North Tract) the land located north of Joliet Road, and specifically the SUBJECT PROPERTY.

59. The legal descriptions that included the SUBJECT PROPERTY were inserted in the deeds by mutual mistake of the various grantors, including the Halls, the Pearts, and others conveying land to SHAW and/or their attorneys, agents, and representatives.

60. SHAW discovered the mistake in the legal description in 1971 when he had a survey done of the South Tract.

61. SHAW did not assert ownership of the SUBJECT PROPERTY or take possession of the SUBJECT PROPERTY after receiving notice of the mistake.

62. Instead, VULCAN, the Pearts and all preceding owners of the North Tract continued to maintain possession and ownership of the SUBJECT PROPERTY and all land located north of the center line of Joliet Road.

63. VULCAN continues to assert ownership and possession over the SUBJECT PROPERTY.

9

64. In order to make the current deeds conform to the agreement and the intention of the Halls, the Pearts and their predecessors as grantors, and SHAW and VULCAN as grantees, the deeds must be reformed by substituting the proper description of the premises agreed and intended to be conveyed in place of the erroneous description inserted by mistake.

65. The description contained in the deeds should be corrected to read as providing the center line of Joliet Road as the respective northern/southern of the South and North Tracts.

WHEREFORE, VULCAN prays for the entry of judgment in its favor and against SHAW as follows:

(a) That the executed and recorded deeds conveying portions of the South Tract and the North Tract as described above be reformed by striking from such deeds the erroneous description contained in them and inserting the proper description of the premises agreed and intended to be conveyed;

(b) VULCAN's costs in this action; and

(c) Any other relief this Court deems appropriate.

## COUNT II – ADVERSE POSSESSION (735 ILCS 5/13-109)

1-65. VULCAN incorporates paragraphs 1 through 65 as paragraphs 1 through 65 of Count II.

66. VULCAN and the immediate preceding owners of the North Tract have been in actual and continuous possession of the SUBJECT PROPERTY, under claim and color of title, made in good faith, for more than seven successive years preceding the filing of this complaint.

67. During the seven successive year period described in paragraph 69, VULCAN and the immediate preceding owners paid all legally assessed taxes on the SUBJECT PROPERTY.

68. During the seven successive year period described in paragraph 69, VULCAN and the immediate preceding owners' possession of the property was open, notorious, hostile, continuous, adverse, visible, and exclusive.

WHEREFORE, VULCAN prays for judgment in its favor and against Defendant SHAW as follows:

    (a)    this Court declare VULCAN as the legal owner of the SUBJECT PROPERTY;

    (b)    Defendant SHAW be forever enjoined from asserting any claim to the SUBJECT PROPERTY adverse to VULCAN; and

    (c)    any other relief this Court deem appropriate.

## COUNT III – ADVERSE POSSESSION (735 ILCS 5/13-101)

1-65. VULCAN incorporates paragraphs 1 through 65 of Count I as paragraphs 1 through 65 of Count III.

66. VULCAN and the immediate preceding owners of the North Tract have been in the actual and continuous possession of the SUBJECT PROPERTY, under claim and color of

11

title, made in good faith, for more than twenty successive years preceding the filing of this complaint.

67. During the twenty successive year period described in paragraph 71, VULCAN and the immediate preceding owners paid all legally assessed taxes on the SUBJECT PROPERTY.

68. During the twenty successive year period described in paragraph 71, VULCAN and the immediate preceding owners' possession of the SUBJECT PROPERTY was open, notorious, hostile, continuous, adverse, visible, and exclusive.

WHEREFORE, VULCAN prays for judgment in its favor and against Defendant SHAW as follows:

    (a) this Court declare VULCAN as the legal owner of the SUBJECT PROPERTY;

    (b) Defendant SHAW be forever enjoined from asserting any claim to the SUBJECT PROPERTY adverse to VULCAN; and

    (c) any other relief this Court deem appropriate.


By:/s/ Kimberly D. Fahrbach ARDC No. 6237042
One of the Attorneys for Plaintiff VULCAN LANDS, INC.


Bruce L. Goldsmith, ARDC No. 0996939
Kimberly D. Fahrbach, ARDC No. 6237042
Dykema Gossett PLLC
4200 Commerce Court
Suite 300
Lisle, Illinois 60532
(630) 245-0400