IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| VULCAN LANDS, INC., a New Jersey Corporation, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) ) | Case No. 07 C 6263 |
| CHICAGO TITLE AND TRUST CO., as t/u/t/a 1097435 dated April 14, 1992, JOHN SHAW, and UNKNOWN OWNERS AND BENEFICIARIES, | ) ) ) ) ) | Hon. Judge David H. Coar Hon. Magistrate Judge Jeffrey Cole |
| Defendants. | ) | |

**MEMORANDUM IN SUPPORT OF MOTION TO DISMISS
OR, IN THE ALTERNATIVE, TO STAY PROCEEDINGS**

Defendant, John Shaw, by his attorneys John Anderson and James Murphy, for his memorandum in support of his motion to dismiss or, in the alternative, stay proceedings, states:

**I.
INTRODUCTION**

This action has been brought by Vulcan Lands to assert a right to some undefined portion of real estate, which adjoins its land but to which it is not in title. Vulcan has named Chicago Title and Trust, as trustee under Trust No. 1097435 (hereafter Trust No. 1097435), and John Shaw as a beneficiary thereunder. (Cmplt. ¶2). However, Trust No. 1097435 no longer has an interest in the property. Accordingly, Trust No. 1097435 has filed a motion to drop it as a party this litigation. Mr. Shaw is not seeking to be dropped because he has a beneficial interest in Trust Number 1099147, which is the owner of the Powell Farm, which abuts the Vulcan property along 264 feet of the half section line described in the complaint.

Count I of the complaint seeks reformation of at least two deeds. Count II seeks to assert a right to the real estate under a theory of adverse possession under 735 ILCS 5/13-109. Count III seeks to assert a right to the real estate under a theory of adverse possession under 735 ILCS 5/13-101.

As shall be discussed below, the case should be dismissed for lack of subject matter jurisdiction. Specifically, the complaint reveals that the value of the real estate at issues is less than the jurisdictional amount required under 28 U.S.C.A. § 1332.

In the event that the Court does not dismiss the action for lack of subject matter jurisdiction, it should abstain from exercising jurisdiction under *Colorado River Water Cons. Dist. v. United States*, 424 U.S. 800 (1976).

In the event that the Court determines that it has jurisdiction and should exercise it, Counts I and II should be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

The complaint also be dismissed pursuant to Rule 12 (b)(7) of the Federal Rules of Civil Procedure for failure to name a necessary party under Rule 19 of the Federal Rules of Civil Procedure.

## II.
## FACTUAL BACKGROUND

Chicago Title and Trust Co. as Trustee under Trust No. 1097435, dated April 14, 1992 is no longer the owner of the real estate that is at issue in the instant complaint. Trust No. 1097435 conveyed the property that is south of the Vulcan Property to Chicago Title and Trust Co., as Trustee under Trust No. 1096552, a copy of such deed is attached as Exhibit A hereto. Trust No.

1097435 also conveyed the property that is primarily to the West of the Vulcan Property (a portion of it is south of the Vulcan Property) to Trust No. 1097147. Exh. B

The property that is at issue is all located in Section 28 of Lisbon Township, Kendall County, Illinois, and involves at least two parcels of real estate and possibly four.[1] For the Court's convenience a diagram is attached hereto which shows the rough dimensions and relative locations of the properties. Exh. C. The two parcels that are known to be involved are Vulcan's property which includes all of the northwest quarter of Section 28 with the exception of the east 82.5 feet and the west 99 feet (6 rods) of the southern 429 feet (26 rods).[2] (This property is hereafter referred to as the "Vulcan Property").

It is also certain that the complaint involves the property that lies directly to the south of the Vulcan Property, which property is owned by Trust 1096552. (This property is hereinafter referred to as the "Quarry Property").[3] The Vulcan Property and the Quarry Property abut each other along the half section line of Section 28 (hereinafter "half section line").

It is unclear whether the complaint is intended to include the property that is mostly to the west of the Vulcan Property. (This property is hereinafter referred to as the "Powell Farm").

It is also unclear whether the complaint is intended to include the easterly 82.5 feet of Section 28. Such property is not owned by any of the parties to the litigation.

---

[1] It is unclear from plaintiff's complaint exactly what portion of property it is attempting to claim an interest. It is thus unclear how many parcels of property are involved.

[2] The legal description of Vulcan's property is attached hereto as Exhibit D.

[3] The legal the description of the Quarry Property is attached hereto as Exhibit E.

The property over which plaintiff is attempting to establish a superior right is bounded on the west by the west line of Section 28, on the east by the half section line that splits the east and west halves of the Section, on the south by the center line of Joliet Road, and on the north by the half section line that splits the north and south halves of the Section. It is not clear however whether plaintiff is attempting to assert a right over all such property or merely a portion of it.

### III.
### MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION

The complaint should be dismissed because it reveals that the amount in controversy is less than the $75,000.00 jurisdictional amount required under 28 U.S.C. §1332. Before reviewing the specifics of what is involved in this case, it is appropriate to note that the party seeking a federal forum has the burden of establishing jurisdiction. *Wellness Community Naitonal v. Wellness House*, 70 F.3d 46, 49 (7th Cir. 1995). Accordingly, where a defendant challenges the amount in controversy, the plaintiff is required to support its assertion by competent proof. *Id.*

What can be derived from the allegations in the complaint is the maximum size of the strip of property over which Plaintiff is claiming a right to adverse possession. It is approximately 5' wide. We know this because:

A. There is a right of way on either side of the center line of the road that is 35 feet wide. (Cmplt. ¶16).

B. A survey showed the East-West section line to be 40 feet north of the center line. (Cmplt. ¶35)

C. Illinois courts have recognized that adverse possession will not lie against a public

entity regarding the dedication of streets and highways. *Terwelp v. Sass*, 111 Ill.App.3d 133, 138, 443 N.E.2d 804, 808 (1982). Accordingly, Plaintiff cannot obtain by adverse possession that part of the property that is subject to the right-of-way.

Hence, since only 40' is south of Plaintiff's property and 35' is not subject to adverse possession, the width of the strip is 5 feet.

We further know from the complaint that the longest strip over which Plaintiff is making a claim of adverse possession is 2220.34 feet which is that portion of the legal description referred to in Exhibit A to the compliant which runs along the "north line of the Southwest Quarter of said Section 28". [4]

Thus, the section of property over which Plaintiff is attempting to claim adverse possession is 5' by 2220.34', which equals 11,101.70 square feet. Given that an acre is 43,570 square feet, the strip is .2549 acres.

The value of such property can also be fairly ascertained from the Complaint. Exhibit B to the Complaint is the deed to Plaintiff's property. (Cmplt. ¶3). It shows that the state real estate transfer tax was $7,715.50. (Cmplt. Exh. B thereto). Given that the transfer tax rate is 50 cents for every 500 dollars of the sale price, 35 ILCS 200/31-10, it can be determined that the cost of all Plaintiff's property was $7,715,500.00. Given that Plaintiff's property is 234 acres (Cmplt. ¶3), it can also be determined that the sales price was $32,972.22 per acre. (7,715,500.00 ÷ 234) Hence, the strip would have a value of .2549 x $32,972.22 per acre, which equals $8,404.62 on

---

[4]Although Section 28 is longer, this is the longest strip along Plaintiff's property that is owned by one party.

June 7, 2006, the date of the deed. This is less then 1/8 of the $75,000 jurisdictional amount required under 28 U.S.C.A. §1332.

Accordingly, the Complaint should be dismissed for lack of subject matter jurisdiction.

## IV.
## ABSTENTION

In the instant case, Plaintiff has not sued the owner of the real estate over which it claims adverse possession. Although Trust No. 109743 was the owner of both the Powell Farm and the Quarry Property, it conveyed its interest in the Quarry Property to Chicago Title and Trust, as trustee under Trust No. 1096552, on August 12, 1992, and it conveyed its interest in the Powell Farm to Trust No. 1099147, on September 29, 1993. (Exh. A and B).

Those two Trusts (Nos. 1096552 and 1099147) have filed a State action against Vulcan. (The Complaint in that case is attached hereto as Exh. F). Also named in that lawsuit as a defendant is William Peart. He is named because it is clear from the deed to Vulcan that the property that was conveyed to Vulcan did not include the disputed strip. Vulcan obtained the Peart Property on June 7, 2006. (Cmplt. Exh. B thereto). However, prior to that date, Vulcan had a survey prepared for the property that showed that the south line of the northwest quarter of Section 28 was north of the center line of Joliet Road and North of the northern edge of Joliet Road. Accordingly, at the time it obtained the Peart Property, it knew that it was not obtaining the disputed strip. See Exh. G.[5] Consequently, if anyone has an interest in the subject property other than the two trusts, it would appear to be Peart.

Given the pendency of the other suit in state court, it thus becomes appropriate to

---

[5]This also appears to doom its claim for reformation because it clearly knew what it was getting, but obtained no deed for property south of the surveyed quarter section line.

consider whether this court should abstain from exercising jurisdiction under the doctrine enunciated in *Colorado River Water Cons. Dist. v. United States*, 424 U.S. 800 (1976). In applying this doctrine, a federal court must undertake a two-part inquiry. First, the court must determine whether the state and federal actions are parallel. Once it is established that the suits are parallel, the court must consider a number of non-exclusive factors that might demonstrate the existence of 'exceptional circumstances.' " *Clark v. Lacy*, 376 F.3d 682, 685 (7th Cir. 2004).

In determining whether there are exceptional circumstances that warrant abstention, the Court should consider: (1) whether the state court has assumed jurisdiction over property; (2) the inconvenience of the federal court; (3) whether piece meal litigation can be avoided; (4) the order in which jurisdiction was obtained in the two forums; (5) the source of governing law, federal or state; (6) whether the state procedures are adequate to protect the plaintiff's federal rights; (7) the progress of the proceedings; (8) the presence or absence of concurrent jurisdiction; (9) the availability of removal; and (10) the vexatious or contrived nature of the federal claim. *Clark supra*, 376 F.3d at 685. No one factor is necessarily determinative.

Generally, a suit is parallel when substantially the same parties are contemporaneously litigating substantially the same issues in another forum." *Interstate Material Corp. v. City of Chicago,* 847 F.2d 1285, 1288 (7th Cir.1988) (internal quotation marks omitted). Among other things, to determine whether two suits are parallel, a district court should examine whether the suits involve the same parties, arise out of the same facts and raise similar factual and legal issues. *See Clark, supra*, 376 F.3d at 686.

Here both the federal and state court cases involve the rights to a strip of land which is largely, if not completely, the same. Both suits presumably involve questions of adverse

possession and questions as to whether certain deeds should be reformed due to mutual mistake. Both cases involve Vulcan as a party. In the federal case, Vulcan initially named the wrong party as the owner of the property to its south. But, it is evident that the owners of the Quarry Property and the Powell Farm, should be parties to the instant action. The primary differences between the two suits is that William Peart has been named as a party in the state action. It is thus evident that the suits are parallel. It thus becomes appropriate to consider the various factors identified in *Colorado River* and its proginey.

The first *Colorado River* factor counsels in favor of abstention because both cases involve the same res, that being a piece of property within Section 28.

With regard to the second factor, the state court is more convenient. Each of the parties either owns property in Kendall County which relates to the action or, in the case of Peart, is a citizen of Kendall County. Furthermore the property that is at issue is approximately 13 miles from the Kendall County Court house compared to approximately 60 miles to the Federal Court house. Thus, to the extent the court would need to view the property for a better understanding of the issues, it would be more convenient for the state court to do so. See *Boner v. Peabody Coal Co.*, 142 Ill.2d 523, 568 N.E.2d 883 (1991) (trier of fact may be allowed to view property to enable it to better understand and apply the evidence).[6] Furthermore, any argument that the federal court is convenient is undercut by the fact that the state court proceeding will continue

---

[6] Viewing the property in this case may be particularly helpful to the trier of fact in this case. Illinois courts have held that in actions where there is a claim of adverse possession, a party takes property inch by inch. *Chicago & N.W. Ry Co. v. Kennedy*, 344 Ill.309, 317, 176 N.E. 269, 272 (1931). In this case, inches are important given that the width of the whole property is only 5 feet. Moreover, it is expected that a portion of the evidence will be aerial photographs showing the line up to which Vulcan's predecessors actually farmed. A full understanding of these photographs would certainly be aided by a view of the property itself.

regardless of whether this action is stayed. See *Clark, supra*, 376 F.3d at 688.

The third factor favors the state court to avoid piecemeal litigation because all of the appropriate necessary parties are before the state court (Peart is not before this Court). Thus, without staying the federal action, "the two actions would proceed simultaneously - duplicating the amount of judicial resources required to reach a resolution." *Id*. The "two courts would oversee similar pre-trial motions and discovery matters and two triers of fact would be asked to consider the same issues, evidence and witnesses." *Id*. This redundancy favors a stay. *Id*. Furthermore, the stay would protect against inconsistent results. *Id*.

Determination of the order in which the courts obtained jurisdiction–the fourth factor--is dependent upon what factors are taken into consideration. If one is looking for *any* filing, it is the federal that came first. However, if one looks further, i.e. to the naming of an appropriate defendant and for service of process, it is the state suit that was first. Indeed, appearances by all defendants were first filed in the state action. The time line of filing, process and service is as follows:

On November 5th, the federal action was filed by Vulcan. The complaint named as defendants Chicago Title and Trust as trustee under trust number 1097435, dated April 14, 1992, and John Shaw.

On November 27th, process was issued as to Chicago Title and Trust as trustee under trust number 1097435. On that date process was also issued as to John Shaw. See Exh. H.

On November 28th, the state complaint was filed by Chicago Title and Trust as trustee under trust number 1096552 and Chicago Title and Trust as trustee under trust number No.1099147. (Exh. F). The complaint named as defendants Vulcan and William Peart. On that

same day process was issued against both Vulcan and Peart and both were served on that day. (Exh. I).

On December 11th, process in the federal suit was served on John Shaw. (Exh. H).

On December 13, 2007, Vulcan and Peart filed a joint appearance by their attorney, Dykema Gosset PLLC, and filed a motion for an extension of time. Exh. J.

As to the fifth factor, the complaint that is before this Court does not reference any federal claim that plaintiff is proceeding under and only claims diversity as a basis for being before this Court. It is thus evident that state law will govern the determination of the case. Thus, the fifth factor favors the state action. *Clark, supra,* 376 F.3d at 688.

As to the sixth factor, the state procedures are adequate to protect plaintiff's federal rights. Indeed, the only federal right that appears to be at issue is the right that appears to be at issue is the right of a foreign citizen to bring a suit in federal court when there is diversity. But, that is a limited right. First it is limited by the amount in controversy, which as discussed above is not met in this case. Second, diversity is not a basis for removal to federal court where one of the defendants is a citizen of the forum state. In the state case, Peart who is one of the defendants is a resident of Illinois as are plaintiffs in that case. Finally, it appears that Peart and Vulcan have aligned themselves together. (See Exh. J). Thus, it appears that, had Peart been an initial party to this lawsuit, he would have been on the side of Vulcan, and thus a plaintiff. Accordingly, since Peart is a resident of Illinois, there would have been no absolute diversity.

The seventh factor, the relative progress of the cases is neutral since both cases are at the pleadings stage.

The ninth factor also favors abstention. The state court claim cannot be removed to

federal court because complete diversity is missing from this case.

Given all of these factors, it is evident that abstention is appropriate.

## V.
## DISMISSAL UNDER RULE 12(b)(6)

### A.
### Count I is Barred by the Applicable Statute of Limitations

Under Illinois law, a claim for reformation is subject to the ten year statute of limitations provided for in section 13-206 of the Illinois Code of Civil Procedure, 735 ILCS 5/13-206. *Beyon Building Corp. v. National Guardian Life Insurance Co.*, 118 Ill.App.3d 754, 761, 455 N.E.2d 246, 251 (2nd Dist. 1983). The statute begins to run when the instrument for which reformation is sought is executed. *Id.* at 762.

Count I seeks the reformation of "the executed and recorded deeds conveying portions of the South Tract and the North Tract as described above." (Cmplt. at 10). The complaint does not specifically identify which deeds are to be reformed. One gathers from the complaint the allegation that the Halls were the owners of the all of the property at issue at one time. (Cmplt. ¶12). However, no deed from the Halls is attached to the complaint or specifically referred to in the complaint except for the deed for an easement from the Halls to the County. (Cmplt. ¶16). The deed that is attached to the complaint and contains a description of the Vulcan Property is from Peter Greko to Vulcan Lands. (Cmplt. Exh. B thereto). And, the deed that is attached that contains a legal description of the Quarry Property is from Theodore Shaw to Trust No. 1097435. What is thus evident is that, if the mistake involved the Halls, there are other deeds that are not described in the complaint for which reformation is sought. This is important because there will be an issue as to whether there can be reformation in an action involving successors to the parties

that are alleged to have made the mistake.[7] That being said, it is evident that Vulcan is attempting to reform at least two deeds, and their progeny, for which reformation is sought. There is the initial deed from Hall to Shaw and the initial deed from Hall to Peart. (See Cmplt.¶¶ 12, 20, 31). The complaint further makes clear that the Shaw deed was executed by at least 1964 (See Cmplt. ¶6 ("Since 1964, SHAW has possessed all of the land that abuts Joliet Road to the south....")). The complaint also makes clear that the deed from the Halls to the Pearts was executed by at least 1968. (See Cmplt. ¶18 ("By 1968 William C. Peart and/or Nora Peart...owned all of the land referenced herein as the North Tract")). Accordingly, any claim to reform the deed from Halls to Shaw was barred after 1974, and any claim to reform the deed from the Halls to Pearts was barred after 1978. Accordingly, Count I should be dismissed.

### B.
### Count I Fails to State a Claim Upon Which Relief Can Be Granted

Count I seeks reformation due to mutual mistake. Essentially, it is claimed that, at the time that the property was deeded, the parties to the deed believed that the half section line was

---

[7] Although defendant does not wish to raise factual issues outside of the complaint at this time, defendant believes that clarification may be helpful to both the Court and Plaintiff for future proceedings. The property that is directly to the south of the Vulcan Property was acquired by Theodore Shaw in four separate transactions. The property that comprises the Quarry Property was acquired as follows: In 1943, Shaw received a deed from the Halls for a piece of property that has a width of 200' along the half section line. In 1959, Shaw received a deed from Earl and Tressa Goodale for a piece of property just west of the property acquired from the Halls. Such property has a width of approximately 1,050 feet along the half section line. It appears that this property was obtained by the Goodales through 11 separate deeds conveying various fractional interest in the property to the Goodales. In 1964, Shaw received another deed from the Goodales for another piece of property located west of the piece initially obtained from the Goodales. It has a width of approximately 970 feet along the half section line. Shaw obtained the Powell Farm from Charles and Gladys Powell in 1972. That property runs along the half section line for a distance of approximately 353 feet, of which approximately 264 feet abuts the Vulcan Property along the half section line.

located in the center of Joliet Road. Count I thus requests that the deed(s) be reformed to be consistent with that belief.

The problem with any action seeking to reform the legal description of the Vulcan Property is that the intent of the legal description is straight forward. Thus, if anyone had wanted to know where the line was located, all they had to do was survey it. It thus does not present a factual scenario that is appropriate for reformation.

### C.
### Count II Fails to State a Claim Upon Which Relief Can Be Granted

Count II of the complaint purports to be based on section 13-109 of the Illinois Code of Civil Procedure, which states:

> § 13-109. Payment of taxes with color of title. Every person in the actual possession of lands or tenements, under claim and color of title, made in good faith, and who for 7 successive years continues in such possession, and also, during such time, pays all taxes legally assessed on such lands or tenements, shall be held and adjudged to be the legal owner of such lands or tenements, to the extent and according to the purport of his or her paper title. All persons holding under such possession, by purchase, legacy or descent, before such 7 years have expired, and who continue such possession, and continue to pay the taxes as above set forth so as to complete the possession and payment of taxes for the term above set forth, are entitled to the benefit of this Section. 735 ILCS 5/13-109.

As the above section clearly states, a claim under the above section must be "with color of title" and shall only entitle a party to lands "to the extent and according to the purport of his or her paper title." The complaint concedes that plaintiff's paper title only goes to the half section line. It further asserts that it seeking a judgment declaring that it is the owner of property south of that line, i.e. beyond its paper title. Accordingly, it cannot prevail on its claim under section 13-109. Accordingly, Count II should be dismissed.

## VI.
## DISMISSAL UNDER RULE 12(b)(7)

William Peart is a necessary party to these proceedings.[8] As the complaint in the instant case alleges, William Peart was the owner of the Vulcan Property from 1968 to 2006. (Cmplt. ¶ 18). Vulcan's claim to the disputed strip of property is based upon a theory of adverse possession. Fundamental to this claim are the allegations that Peart occupied the disputed strip of property and paid taxes on it prior to the sale of the Vulcan Property from Peart to Greco and then Greco to Peart. (Cmplt. ¶¶ 23, 24, 25, 26). The question arises however as to whether it is Peart and not Vulcan that has the purported claim to adverse possession.

The complaint shows that the deed that Vulcan obtained is for property that is north of the half section line. (Cmplt. Exh. B thereto). There is no deed that is attached to the pleadings or that defendant is aware of that purports to transfer the disputed property from Peart to Vulcan (or Peart to Greco to Vulcan). Accordingly, it appears that, if there is a claim based upon adverse possession, Peart is the holder of that claim. He is thus a necessary party. Furthermore, it is evident that he is subject to service since he is a citizen of Illinois, has been served in the state lawsuit, and has appeared in the state law suit. See Exh. J. Accordingly, the complaint should be dismissed pursuant to Rule 12(b)(7) for failure to join a necessary party under Rule 19.

Furthermore, it has become evident in the state proceeding that the addition of Peart as a party in this lawsuit would destroy diversity jurisdiction because Peart and Vulcan have aligned themselves together concerning the issues involved in the two cases.

---

[8]Depending upon what property is actually being sought, Kendall County may also be a necessary party since it has a right of way between the center line of Joliet Road and the half section line.

For purposes of determining diversity jurisdiction, courts are to look beyond the pleadings and arrange the parties according to their sides in the dispute. *Fidelity and Deposit Company of Maryland v. City of Sheboygan Falls*, 713 F.2d 1261, 1264 (7th Cir. 1983). In the instant case it is incontrovertible that Peart and Vulcan have aligned themselves with regard to the issues in this case since they have filed a joint appearance in the state case and are being represented by the same law firm(Dykema Gossett PLLC) in that case. See Exh. F. Dykema Gossett is also representing Vulcan in this case. Accordingly, the complaint should be dismissed for failure to join a necessary party.

## VII.
## SUMMARY

For the foregoing reasons, the complaint should be dismissed for lack of subject matter jurisdiction. Alternatively, the proceedings should be stayed. And as an alternative to both of those actions, the complaint should be dismissed for failure to join a necessary party or Counts I and II should be dismissed.

JOHN SHAW, Defendant,

By: _____s/James A. Murphy_____
One of His Attorneys

James A. Murphy - Atty. No. 06195324
MAHONEY, SILVERMAN & CROSS, LTD.
822 Infantry Drive, Suite 100
Joliet, IL 60435
(815) 730-9500

John H. Anderson
SEYFARTH SHAW LLP
131 South Dearborn Street, Suite 2400
Chicago, Illinois 60603
(312) 460-5000