IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| VULCAN LANDS, INC., a New Jersey Corporation,<br><br>　　Plaintiff,<br><br>vs.<br><br>CHICAGO TITLE AND TRUST CO., as t/u/t/a 1097435 dated April 14, 1992, JOHN SHAW, and UNKNOWN OWNERS AND BENEFICIARIES,<br><br>　　Defendants. | Case No.:　　07 CV 6263<br><br>Hon. Judge David H. Coar<br><br>Hon. Magistrate Judge Jeffrey Cole |

### PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS OR IN THE ALTERNATIVE TO STAY PROCEEDINGS

On November 5, 2007, Plaintiff Vulcan Lands, Inc. (hereinafter "Vulcan") filed a three-count complaint for declaratory relief against Defendants. (See Ex. A, Pl.'s Compl., Dkt. #1.) Vulcan's complaint alleges that Vulcan is the true owner of a specific piece of land (the "Subject Property") that has mistakenly been included in the legal description of deeds conveying land into the Defendant trust. Vulcan's complaint seeks an order from this Court declaring Vulcan to be the rightful owner of the Subject Property.

On January 2, 2008, Defendant John Shaw filed a motion to dismiss/motion to stay proceedings.[1] First, Shaw argues that this Court does not have subject matter jurisdiction over Vulcan's lawsuit because the amount in controversy is less than $75,000. Second, Shaw argues that this Court should abstain from hearing Vulcan's claims on the basis that Chicago Title and Trust ("Chicago Title") has now filed a state court lawsuit seeking a declaration that it owns the Subject Property. (See Ex. B, Def.'s State Ct. Compl.) Third, Shaw argues that counts I and II do not state valid claims. Finally, Shaw argues that Vulcan's complaint should be dismissed under Rule 12(b)(7) on the basis that Vulcan has failed to join a necessary party. None of

---

[1] Defendant Chicago Title Trust Co. as t/u/t/a 1097435 filed a motion to drop it as a Defendant on the basis that a different numbered trust is the proper party. Vulcan addresses Chicago Title Trust's motion in its motion to correct/amend its complaint.

1

Shaw's claims has merit. As discussed below, this Court has jurisdiction over this controversy, and Vulcan has stated valid claims against all necessary parties. Therefore, Defendant's motion should be denied.

## I. THIS COURT HAS JURISDICTION OVER VULCAN'S CLAIMS

In evaluating the monetary threshold of $75,000 under diversity jurisdiction, the federal courts have adopted the "legal certainty" test. Gardynski-Leschuck v. Ford Motor Co., 142 F.3d 955, 957 (7th Cir. 1998). Under the legal certainty test, courts will find federal jurisdiction on the basis of the plaintiff's complaint unless it appears "to a legal certainty that the claim is really for less than the jurisdictional amount." St. Paul Mercury Indemnity Co. v. Red Cab Co., 303 U.S. 283, 289, 58 S. Ct. 586, 590 (1938). When determining a claim meets the minimum amount of controversy, a plaintiff's evaluation of the stakes must be respected. Barbers, Hairstyling for Men & Women, Inc. v. Bishop, 132 F.3d 1203, 1205 (7th Cir. 1997). See also Uhl v. Thoroughbred Technology & Telecommunications, Inc., 309 F.3d 978, 983 (7th Cir. 2002). In a case involving equitable relief, "it is the plaintiff's valuation of the right to be protected or the injury to be prevented that matters" in determining the jurisdictional amount. Trilithic, Inc. v. Wavetek U.S. Inc., 6 F. Supp. 2d 803, 808 (S.D. Ind. 1998).

Here, Vulcan has alleged that the value of the Subject Property and the rights associated with it exceed the value of $75,000. (Ex. A, Vulcan's Compl., Dkt #1, at p. 2, ¶ 9.) Defendant takes issue with Vulcan's allegation and argues that the acreage of the Subject Property is so small that value-wise it does not amount to $75,000. (See Def.'s Mem. pp. 4-6.) Not surprisingly, Defendant fails to cite to any case law in support of his method of determining the value of property for jurisdictional purposes. As the Seventh Circuit has explained, the jurisdictional amount must be assessed by looking at the benefit to the plaintiff and the "pecuniary consequence" to those involved in the litigation. See Uhl, 309 F.3d at 983; Columbia Pictures Corp. v. Grengs, 257 F.2d 45, 47 (7th Cir. 1958).

In response to Defendant's challenge to the amount in controversy, Vulcan has attached an affidavit of Arthur Sheridan, a real estate appraiser. (See Ex. C, Sheridan Aff.) It is well-established that a court may review affidavits and other evidence in determining whether there is a reasonable probability that jurisdiction exists. Kontos v. U.S. Dep't of Labor, 826 F.2d 573, 576 (7th Cir. 1987). As alleged in Vulcan's complaint, ownership of the Subject Property will allow Vulcan access to Joliet Road. (See Ex. A, Vulcan's Compl., Dkt. #1, ¶¶ 18-30, 43-47.)

2

The attached affidavit states that Mr. Sheridan has performed an estimate of the fair market value of Vulcan's property, with and without access to roadway frontage to Joliet Road. (Ex. C, Sheridan Aff.) In Mr. Sheridan's opinion, the fair market value of Vulcan's property decreases by nearly $5,000,000 if Vulcan does not have access to Joliet Road. (Id. ¶¶ 6, 7.) Accordingly, to Vulcan the Subject Property, albeit not large in size, is certainly worth more than $75,000—access to Joliet Road is paramount to Vulcan's ability to run its mining operation and has a significant impact on the value of its property.

In Uhl the Seventh Circuit held that the party's assertion that he would have to spend more than $75,000 to avoid the costs of injunction and condemnation was sufficient so that the jurisdictional amount requirement of § 1332 was satisfied. Uhl, 309 F.3d at 983. In a similar fashion, Mr. Sheridan's affidavit accomplishes the purpose of satisfying § 1332's jurisdictional amount here. See id.; Trilithic, 6 F. Supp. 2d at 808. Simply stated, Vulcan has produced competent proof that the value of the Subject Property is more than $75,000. See Gould v. Artisoft, inc., 1 F.3d 544, 547 (7th Cir. 1993) (competent proof is proof to a reasonable probability that jurisdiction exists). Vulcan's valuation must be respected, and therefore this Court should deny Defendant's motion to dismiss for lack of jurisdiction. See Barbers, 132 F.3d at 1205.

## II. THE ELEMENTS FOR ABSTENTION DUE TO THE STATE COURT PROCEEDING ARE NOT SATISFIED

Defendant's request for abstention should be rejected. (See Def.'s Mem. P. 7.) The overriding rule is that abstention under Colorado River Water Conservation District v. United States, 424 U.S. 800, 96 S. Ct. 1236 (1976) is "the exception," not the rule. Sverdrup Corp. v. Edwardsville Community Unit Sch. Dist. No. 7, 125 F.3d 546, 550 (7th Cir. 1997). Indeed, the mere fact that an action is pending in state court is ordinarily no bar to parallel federal proceedings. LaDuke v. Burlington N. R.R. Co., 879 F.2d 1556, 1558 (7th Cir. 1989). Rather, federal courts have a "virtually unflagging obligation" to exercise the jurisdiction given to them (Clark v. Lacy, 376 F.3d 682, 685 (7th Cir. 2004) (quoting Colorado River, 424 U.S. at 817-18, 96 S. Ct. at 1246)), and should abstain from hearing a case before it only in "exceptional circumstances." Colorado River, 424 U.S. at 817-18, 96 S. Ct. at 1246. As the United Supreme Court has explained, the inquiry is not to find a reason for the *exercise* of federal jurisdiction, but rather whether there exists the "clearest of justifications" that can suffice to justify the *surrender*

of that jurisdiction. Moses H. Cone Memorial Hospital v. Mercury Construction Corp., 460 U.S. 1, 25, 103 S. Ct. 927, 942 (1983) (emphasis in original).

To determine whether a stay is appropriate in a particular case, a court must conduct a two-part analysis. First, a court must determine whether the state and federal actions are actually parallel. Clark, 376 F.3d at 685. Second, if the cases are parallel, the court must analyze several factors to determine whether "exceptional circumstances" exist. Id. The factors to be considered are: (1) whether the state has assumed jurisdiction over property; (2) the inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; (4) the order in which jurisdiction was obtained by the concurrent forums; (5) the source of governing law, state or federal; (6) the adequacy of the state-court action to protect the federal plaintiff's rights; (7) the relative progress of the state and federal proceedings; (8) the presence or absence of concurrent jurisdiction; (9) the availability of removal; (10) the vexatious or contrived nature of the federal claim. Id.; see also Lumen Construction Inc. v. Brant Construction Co., 780 F.2d 691, 694-95 (7th Cir. 1985). No one factor is necessarily determinative, and the weight given to any one factor is determined solely by the circumstances of the particular case. Schneider Nat'l Carriers, Inc. v. Carr, 903 F.2d 1154, 1157 (7th Cir. 1990).

In this case, Vulcan agrees that the state court case Chicago Title filed is parallel to Vulcan's federal action. Vulcan's complaint seeks a declaration from this Court that it is the legal owner of the Subject Property, and Chicago Title seeks a declaration from the state court that it is the legal owner of the Subject Property. (Compare Ex. A, Pl.'s Compl., Dkt. #1 with Ex. B, Def.'s State Court Compl.) The same facts and legal issues exist in both cases in that both courts are being asked to determine the true owner of the Subject Property.

Turning to the second prong of the test and the ten-factor analysis, these ten factors do not establish "exceptional circumstances" that support abstention. To the contrary, these factors support Vulcan's position that this Court should not surrender its jurisdiction to the state court.

### A.　The State Court Has Not Assumed Jurisdiction Over this Issue

Plaintiff agrees that the Illinois court has the ability to exercise jurisdiction over this matter. Given that Vulcan filed this federal lawsuit first, and Defendant's state court lawsuit raises the same issues, Vulcan has filed a motion with the state court seeking dismissal and/or a stay under 735 ILCS 619(a)(3). (See Ex. D, Vulcan's Mtn. Dism. State Compl.) Vulcan's argument before the state court that the state court should defer to a previously filed federal

4

proceeding involving the same issues is well supported by Illinois law. See Village of Mapleton v. Cathy's Tap, Inc., 313 Ill. App. 3d 264, 729 N.E.2d 854, 246 Ill. Dec. 203 (Ill. App. 2000); Kapoor v. Fujisawa Pharmaceutical Co., 298 Ill. App. 3d 780, 788-89, 699 N.E.2d 1095, 232 Ill. Dec. 910 (Ill. App. 1998); Katherine M. v. Ryder, 254 Ill. App. 3d 479, 487, 627 N.E.2d 42, 48, 193 Ill. Dec. 883 (Ill. App. 1993); West Bend Mutual Ins. Co. v. Salemi, 158 Ill. App. 3d 241, 251, 511 N.E.2d 785, 791, 110 Ill. Dec. 608 (Ill. App. 1987); People ex rel. Dept. of Public Aid v. Santos, 92 Ill. 2d 120, 440 N.E.2d 876, 65 Ill. Dec. 21 (Ill. 1982); Consequently, Defendant's claim here that "the state court proceeding will continue regardless of whether this action is stayed" (see Def.'s Mem. pp. 8-9) is premature and speculative. This case belongs in federal court where Vulcan filed it.

**B. A Federal Forum Is Not Inconvenient**

Defendant's argument that state court is more convenient essentially rests on his argument that, should the Court need to see the Subject Property, the property is located closer to the state courthouse than this Court and therefore easier for the state court to inspect. (Def's Mem. p. 8.) Inspection of the Subject Property, however, is not needed to resolve the issues presented before this Court. Contrary to Defendant's characterization, this is not a case where the claimed adverse possession is derived from taking property "inch by inch." (Id. at 8, n. 6.) Rather, Vulcan alleges that it and the previous owner possessed the Subject Property uninterrupted for nearly 40 years, all the while acting as the owners of the Subject Property. Validating this claim depends on proof of historic possession, not an inspection of the property.

**C. The State Court, not this Court, Should Act to Avoid Piecemeal Litigation**

Defendant's argument that a stay is necessary to avoid piecemeal litigation ignores the obvious fact that Defendant created the redundancy of the state court action by filing it after this case was filed. There is no dispute that Vulcan filed this federal action first. In fact, Defendant acknowledges Vulcan's federal lawsuit in its state court complaint. (See Ex. B, Def.'s State Court Compl. ¶ 8.) Defendant should not be allowed to rely on an argument of multiplicity of lawsuits when it created that situation by filing the duplicative action.

**D. Vulcan's Federal Action Was Filed First**

Defendant concedes Vulcan filed the federal action first. (Def.'s Memo pp. 9-10.) Defendant's argument that William Peart is a necessary party who should be, and has not yet

5

been, joined is erroneous and is discussed in greater detail in part IV *infra* in response to Defendant's Rule 12(b)(7) motion to dismiss.

### E. The Source of Governing Law Is Not Determinative

Vulcan acknowledges that its claims derive from state law. As the Seventh Circuit has explained, however, "diversity litigants are not second class citizens." Evans Transp. Co. v. Scullin Steel Co., 693 F.2d 715, 717 (7th Cir. 1982). Consequently, that this Court would be applying state law does not, in and of itself, provide a basis for the "exceptional circumstances" that warrant dismissal of Plaintiff's complaint. See LaDuke v. Burlington N. R.R. Co., 879 F.2d at 1558 (that state court action is pending is ordinarily no bar to parallel federal proceedings).

### F. Vulcan Has a Right to Have Its Claims Heard in Federal Court

Defendant's various arguments that this factor weighs in his favor are misplaced. Defendant again relies on the necessity of joining Peart to the federal court action when, in fact, as explained *infra* part IV, Peart is neither a necessary nor indispensable party to the issue of ownership of the Subject Property. Further, Defendant's reliance on Vulcan's inability to meet the amount in controversy is flawed, as explained *supra* part I. Finally, Vulcan reiterates that it has a right to file its claims in federal court as a diversity litigant. See, e.g., AXA Corporate Solutions v. Underwriters Reinsurance Corp., 347 F.3d 272, 280 (7th Cir. 2003).

### G. Vulcan Has Filed a Motion to Dismiss the State Court Lawsuit

With regard to progress of the state court proceedings, Vulcan has filed a motion to dismiss Plaintiff's lawsuit, which is scheduled to be presented to the state court on February 14, 2008. Vulcan's co-defendant in the state court lawsuit is William Peart, who has filed a separate motion to dismiss based on his lack of a current ownership interest in the Subject Property. (See Ex. E, Peart's State Court Mtn. Dism.) Consequently, the state court lawsuit has not progressed beyond the initial pleadings stage.

### H. Concurrent Jurisdiction Is Undetermined at this Juncture

As noted above, Vulcan and Peart have filed motions to dismiss or in the alternative stay the state court proceedings based on the lawsuit before this Court. The state court has not ruled on these motions, and in fact no briefing schedules have been entered on the motions at this time.

### I. Defendant's State Court Lawsuit Can be Removed to this Court

Defendant argues that his claims cannot be removed to federal court because the inclusion of Peart destroys diversity jurisdiction. Defendant's argument loses all force given that

6

Peart is not a proper party to the issue of ownership of the Subject Property. As explained *infra* part IV, Peart has no current ownership interest in the Subject Property, but rather is a prior owner who exercised control over the Subject Property. There is no basis for Peart to be included in either the state or federal lawsuit. Further, Defendant's claim that he, and not Vulcan, is the true owner of the Subject Property will be resolved based on the framing of the issues raised by Vulcan.

### J.   Vulcan's Federal Lawsuit Is Not Contrived

Not surprisingly, Defendant completely avoids discussion of the tenth factor of the Colorado River abstention analysis. Indeed, as Vulcan filed its claims in federal court first, it cannot be said that its claims are contrived. To the contrary, Defendant filed its state court lawsuit only after it became aware of Vulcan's federal lawsuit. Further, in its state court lawsuit, Defendant requests the state court determine the exact ownership issue Vulcan raises before this court. (Compare Ex. A, Vulcan's Compl., Dkt. # 1. with Ex. B, Def.'s State Court Compl.) Defendant's efforts to create multiple lawsuits involving the same issues should not be tolerated by this Court, as any appearance of contrivance or vexation is Defendant's own doing.

In conclusion, the ten-factor analysis weighs in favor of denying Defendant's motion for abstention. Vulcan filed this case in federal court, and it is entitled to its federal forum. See AXA Corporate Solutions, 347 F.3d at 280. Defendant has not shown that "exceptional circumstances" exist for this Court to surrender its federal jurisdiction, and therefore Defendant's motion should be denied. See Moses H. Cone Memorial Hospital, 460 U.S. at 25, 103 S. Ct. at 942.

### III.   COUNTS I AND II STATE VALID CLAIMS

Defendant's attacks against the sufficiency of Plaintiff's complaint also fail. Contrary to Defendant's position, Counts I and II of Plaintiff's complaint state valid causes of action that withstand Rule 12(b)(6) scrutiny. A motion to dismiss pursuant to Rule 12(b)(6) should be granted only if the challenged pleading fails to state a claim upon which relief can be granted. Corcoran v. Chicago Park District, 875 F.2d 609, 611 (7th Cir. 1989). A Rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint, not the merits of the suit. See Gibson v. City of Chicago., 910 F.2d 1510, 1520 (7th Cir.1990). To survive a 12(b)(6) motion to dismiss, a complaint must set forth "a short and plain statement of the claim showing that the pleader is entitled to relief" (see Fed.R.Civ.P. 8(a)(2)), such that the defendant is given "fair notice" of

7

what the "claim is and the grounds upon which it rests." Bell Atlantic Corp. v. Twombly, ___ U.S. ___, 127 S. Ct. 1955, 1969 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47, 78 S. Ct. 99 (1957)). Counts I and II of Vulcan's complaint satisfy this standard.

### A.  COUNT I STATES A VALID CLAIM

Defendant's argument that Count I is barred by the statute of limitations is erroneous. (See Def.'s Mem. pp. 11-12.) It is well-established that a cause of action accrues when facts exist that authorize one party to maintain an action against another. Beynon Building Corp. v. National Guardian Life Ins. Co., 118 Ill. App. 3d 754, 762, 455 N.E.2d 246, 251, 74 Ill. Dec. 216 (Ill. App. 1983). Indeed, the statute of limitations commences to run when the party to be barred has a right to invoke the aid of the court to enforce his remedy. Id. In the case of claims for mutual mistake, the statute of limitations period is ten years. 735 ILCS 5/13-206.

Here, Vulcan alleges that it purchased the Peart Property in 2006. (Ex. A, Pl.s' Compl., Dkt. #1, p. 5, ¶ 27.) In doing so, Vulcan alleges that it believed it was purchasing the Subject Property and that Peart thought he was selling land that included the Subject Property. (Id. at ¶¶ 55, 56.) Under these facts, the statute of limitations began to run at the time of Vulcan's purchase in 2006. Indeed, prior to that time, Vulcan did not own or possess the Peart Property and Subject Property and had "no right to invoke the aid of the court" to enforce its remedy. Certainly, it cannot be said that Vulcan had a right to invoke the aid of a court to reform deeds prior to the time it obtained an ownership interest or had possession of the property at issue. See Maxwell v. Nieft, 313 Ill. App. 354, 40 N.E.2d 554, 555 (Ill. App. 1942) (explaining that the plaintiff could not have sued until it was injured and had a right to enforce a remedy). Therefore, since Vulcan has brought its mutual mistake claim within ten years of being in a position to bring such a claim, the claim is within the applicable statute of limitations. Consequently, Defendant's motion to dismiss Count I for failure to comply with the statute of limitations should be denied.

Similarly, Plaintiff's claim that Count I should be dismissed on the basis that reformation is not a proper remedy for Vulcan's mutual mistake claim is misplaced. At the outset, Plaintiff notes that Defendant has included no case law in support of this argument, and his argument consists of merely three sentences. The lack of development of this argument and absence of supporting case law "speaks to the paucity of the argument," and Defendant's argument on this point should be deemed waived. See United States v. Watson, 189 F.3d 496, 500 (7th Cir. 1999).

8

In any event, case law is replete with examples where the parties believed they were selling and buying certain property, but later discovered that the deeds did not accurately convey the parties' understanding as to what property was being bought and sold. See, e.g., Quist v. Streicher, 18 Ill. 2d 376, 164 N.E.2d 44 (Ill. 1960); Schmitt v. Heinz, 5 Ill. 2d 372, 125 N.E.2d 457 (Ill. 1955); Roots v. Uppole, 81 Ill. App. 3d 68, 72, 400 N.E.2d 1003, 1006, 36 Ill. Dec. 423 (Ill. App. 1980); Shelor v. Witt, 69 Ill. App. 3d 172, 387 N.E.2d 18, 25 Ill. Dec. 561 (Ill. App. 1979); Korsgaard v. Elliott, 17 Ill. App. 3d 1061, 309 N.E.2d 263 (Ill. App. 1974). In these cases, the courts discussed reformation of the deeds so that the deeds would represent the parties' understanding as to the ownership of the property in question. This is the precise situation Vulcan alleges here. Vulcan alleges that it believed it was purchasing property that abutted Joliet Road and that the seller also believed he was selling to Vulcan property that abutted Joliet Road. (See Ex. A, Pl.'s Compl., Dkt. #1, ¶¶55-57.) In addition, Vulcan alleges that Defendants never took ownership of or possessed the Subject Property and instead treated the Subject Property as though it was owned by someone else. (Id. ¶¶ 43-51, 61.)

Defendant tries to avoid the issue of mutual mistake by saying the deeds are "straightforward." (See Def.'s Mem. p. 13.) What the deeds state is irrelevant. Rather, it is that since 1958, at which time the Hall deeds clearly identified the section line as the center line of Joliet Road, all subsequent owners have understood their holdings and asserted possession of their properties in a manner so that the owners of the North side of Joliet Road, including Peart/Vulcan, were the recognized owners of the Subject Property. The difference between the parties' understanding and the deeds' language is the foundation for Vulcan's mutual mistake claim and the reason it is seeking relief with this Court. As the cited case law shows, reformation is a viable remedy in such situations.

### B.     COUNT II STATES A VALID CLAIM

Defendant seeks dismissal of Count II, which is brought under 735 ILCS 5/13-109, on the basis that there is no "paper title" declaring Plaintiff the owner of the Subject Property so as to invoke this statute. (See Def.'s Mem p. 13.) Defendant's argument misconstrues the statute at issue, which is a statute for adverse possession. This statute allows a party who holds "color of title," is in "the actual possession of lands" for seven successive years, and has paid taxes on those lands for seven successive years to be adjudged the owner of property. 735 ILCS 5/13-109. Contrary to Defendant's belief, "color of title" under this statute does not mean that the title

9

to support adverse possession must be based on a written instrument. See McClellan v. Kellogg, 17 Ill. 498, 1856 WL 5365 (1856). Rather, "color of title" refers to not perfect title, but a conveyance purporting to convey real estate, which, in fact, because of some imperfection, does not do so—an apparently good but actually imperfect title. See Payne v. Markle, 89 Ill. 66, 1878 WL 9964, *2 (Ill. 1878.) Indeed, even a forged deed can constitute "color of title" for the purposes of the statute. Bergesen v. Clauss, 15 Ill. 2d 337, 155 N.E.2d 20 (Ill. 1958). As the Illinois Supreme Court has explained, "color may be given for title without a deed or writing at all," and even when title is founded upon a writing, "it is not essential that the writing should show upon its face a *prima facie* title," but instead that it be "a foundation for color, however defective." McClellan, 17 Ill. 498, 1856 WL 5365, at *2.

Here, Vulcan has alleged a foundation for color of title through the 1958 Hall Deeds and the history of possession and occupation of the Subject Property. (See Ex. A, Pl.'s Compl., Dkt # 1, p. 3, ¶¶ 12-17.) Specifically, Vulcan alleges that in 1958 the Halls owned the North Tract and conveyed property located in the North Tract to Kendall County for purposes of a roadway. (Id. ¶14.) The description of the property being conveyed to the County in the 1958 Hall Deeds references and includes the land abutting Joliet Road, i.e. the Subject Property. (Id. ¶ 16.) Consequently, as of 1958, the Subject Property was part of the North Tract. Vulcan's complaint then sets forth how the Halls sold the North Tract to the Pearts, who subsequently sold the North Tract to Vulcan. (Id. ¶¶ 18-30) Vulcan alleges that, during this entire period, the Pearts and Vulcan possessed the Subject Property and treated the Subject Property as their own. (Id.)

This chronology is sufficient for purposes of alleging "color of title" under 735 ILCS § 5/13-109. Vulcan has alleged the existence of a document and continuous possession of the Subject Property, in addition to a seven-year history of paying taxes. Section 13-109 requires nothing more. Indeed, it is difficult to imagine circumstances under which § 13-109 would be pertinent if the statute required a "paper title" of ownership, as Defendant suggests. Certainly, if a paper title establishing ownership existed, the issue of ownership would be clear, and there would be no reason to resort to inquiring into who paid taxes and held possession for the purposes of adverse possession. On the other hand, it is in situations such as that alleged here, where one party alleges it has possessed a piece of land, has paid taxes on it, and can support a claim of ownership, where § 13-109 serves its purpose. Therefore, as Plaintiff has stated a claim under § 13-109, Defendant's motion to dismiss count II should be denied.

LISLE\104684.5
ID\KDF

## IV.   WILLIAM PEART IS NOT A NECESSARY PARTY TO THIS ACTION

Without any reliance on case law, Defendant advances the argument that William Peart is a necessary party. (See Def.'s Mem. pp. 14-15.) A defendant raising a Rule 12(b)(7) argument is placed with the burden of showing that the plaintiff has failed to join a necessary and indispensable party. Rotec Industries v. Aecon Group, Inc., 436 F. Supp. 2d 931, 933 (N.D. Ill. 2006). Defendant here has failed to even mention the framework under which courts determine whether a party is necessary to litigation, much less offer this Court any analysis on the issue. Under these circumstances, Defendant has waived this argument from this Court's consideration, and his Rule 12(b)(7) motion to dismiss should be denied. See Estate of Moreland v. Dieter, 395 F.3d 747, 759 (7th Cir. 2005) (perfunctory or undeveloped arguments, and arguments not supported by pertinent authority are waived).

In addition, Defendant's motion should be denied on the merits because Defendant is unable to show that Peart is a necessary party to this litigation. Under Rule 19, a court conducts a two-step inquiry into determining whether a party is necessary and indispensable. First, the court determines if a party is necessary by considering whether: (1) in the party's absence complete relief cannot be accorded among those already parties, or (2) the party claims an interest relating to the subject matter of the action and is so situated that the disposition of the action in the person's absence may impede the person's ability to protect that interest or subject the other parties to a substantial risk of incurring multiple or inconsistent obligations by reason of the claimed interest. Thomas v. United States, 189 F.3d 662, 666-67 (7th Cir. 1999). Second, if the Court finds the party is necessary, the Court then must determine whether the party is indispensable to the judgment "or if the suit can proceed without [its] inclusion." Extra Equipamentos E Exportacao Ltda. v. Case Corp., 361 F.3d 359, 361 (7th Cir. 2004).

In this case, Peart is neither necessary nor indispensable. First, Defendant's argument that Peart is "necessary" because he owned the property Vulcan now owns for over twenty years is erroneous. (See Def.'s Mem. pp. 14-15) In determining whether a contested property has been under the continuous control of someone other than the purported legal owner for twenty years, Illinois law "tacks" on all such control by any persons in continuous possession during the 20-year statutory period. See 735 ILCS 5/13-101; Hermes v. Fischer, 226 Ill. App. 3d 820, 826, 589 N.E.2d 1005, 1009-10, 168 Ill. Dec. 605 (Ill. App. 1992). Likewise, adverse possession

11

through payment of taxes under § 13-109 does not require payment of taxes to be by the same person throughout the seven years. See Kuhn v. Glos, 257 Ill. 289, 100 N.E. 1003 (1913).

Vulcan has alleged that it purchased its property from Peart two years ago. (See Ex. A, Pl.'s Compl., Dkt. #1, ¶ 27.) When Vulcan's two-year term is combined with Peart's ownership term, the 7-year tax payment and 20-year continuous possession periods for adverse possession are satisfied. Peart has no present ownership interest in the Subject Property, as Vulcan alleges that Peart sold its entire interest to Vulcan in 2006. (Id.)

Against this backdrop, neither of the factors in the first part of the two-step inquiry are satisfied to qualify Peart as a necessary party. Whether Vulcan owns the Subject Property through adverse possession is an issue this Court can resolve without making Peart a party. Defendant does not argue that Peart has a present interest that is adverse to Defendant, but rather contends that "Peart and Vulcan have aligned themselves together concerning the issues involved in the two cases" and "are being represented by the same law firm." (See Def.'s Mem. pp. 14-15.) The only alignment that exists in the state court action is Vulcan and Peart's mutual recognition that Peart has no interest in the Subject Property to adjudicate, which is why Peart has moved to be dismissed from that action. (See Ex. E, Peart's State Ct. Mtn. to Dismiss.) Consequently, it cannot be said that Peart has asserted a legal interest in the issue being determined here, and he is not a necessary party.

Similarly, Peart is not an indispensable party. The focus on whether a party is indispensable is the party's ability to protect his interests if he is not joined and made party to the litigation. See Fed. R. Civ. Proc. 19(b). As explained supra, Peart has no interest in the Subject Property, having sold his interest to Vulcan. Accordingly, any adverse possession interest rests with Vulcan, and Peart has no interest that needs protection or that can be affected by this Court's resolution of the ownership issue. Therefore, because Peart's status as a previous property owner and possessor of land does not make him a necessary or indispensable party to this litigation, Defendant's Rule 12(b)(7) motion should be denied.

## CONCLUSION

For the foregoing reasons, Plaintiff Vulcan Materials, Inc., respectfully requests this Court deny Defendant's motion to dismiss/or in the alternative stay Plaintiff's lawsuit.

Respectfully submitted,

**Dykema Gossett PLLC**

By: /s/Kimberly D. Fahrbach (ARDC No. 6237042)
One of the Attorneys for Plaintiff

Bruce L. Goldsmith, ARDC No. 0996939
Kimberly D. Fahrbach, ARDC No. 6237042
Dykema Gossett PLLC
4200 Commerce Court, Suite 300
Lisle, Illinois 60532
(630) 245-0400

## CERTIFICATE OF SERVICE

    I hereby certify that on February 7, 2008, I electronically filed the foregoing Plaintiff Vulcan Lands, Inc.'s Response to Defendants' Motion to Dismiss or in the Alternative to Stay Proceedings with the Clerk of the Court using the ECF system, which sent electronic notification of the filing on the same day to:

James A. Murphy
Paul Root (of Counsel)
Mahoney, Silverman & Cross, Ltd.
822 Infantry Dr., Ste. 100
Joliet, Illinois 60435

                                                  s/ Kimberly D. Fahrbach (ARDC No. 6237042)
                                                  Kimberly D. Fahrbach

LISLE\104684.5
ID\KDF