IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| VULCAN LANDS, INC., a New Jersey Corporation, ) ) ) Plaintiff, ) ) v. ) ) CHICAGO TITLE AND TRUST CO., as ) t/u/t/a 1097435 dated April 14, 1992, ) JOHN SHAW, and UNKNOWN OWNERS ) AND BENEFICIARIES, ) ) Defendants. ) | Case No. 07 C 6263<br><br>Hon. Judge David H. Coar<br>Hon. Magistrate Judge Jeffrey Cole |

**REPLY IN SUPPORT OF MOTION TO DISMISS**

Defendant, John Shaw, by his attorneys, John Anderson and James Murphy, for his reply in support of his motion to dismiss or, in the alternative, stay proceedings, states:

**I.**
**Plaintiff Has Failed to Offer Competent Proof That the**
**Amount in Controversy Meets the Jurisdictional Requirement**

Plaintiff claims that a determination of the amount in controversy should be based upon the decreased value of its property which it owns as a whole if it does not have access to Joliet Road as a result of not owning the disputed Strip that lies between its property and the road. (Response at 2-3). However, the federal courts have been consistent in holding that, where title to land is involved, the amount in controversy is determined by the value of the land at issue. *Occidental Chemical Corp. v. Bullard*, 995 F.2d 1046 (11th Cir. 1993)("In a suit over title to land, it is the value of the property rather than the claim of the contending parties which fixes the amount in controversy for purposes of jurisdiction."); *Sanchez v. Taylor*, 377 F.2d 733, 736 (10th Cir. 1967) (in action to quiet title, "the amount in controversy is the value of the realty directly

affected"): *Shell Oil Co. v. Bank of Ravenswood*, 1985 WL 4239 (N.D.Ill. Nov. 27, 1985)("In suits to quiet title to real property...the well settled rule is that the value of the property constitutes the amount in controversy."). *Cf. Hedberg v. State Farm Mut. Auto Ins.*, 350 F.2d 924, 928 (8th Cir. 1965)("In a replevin action, where title is being litigated, the value of the property is the amount in controversy"). Accordingly, the amount in controversy in this case is to be determined by the value of the Strip of land that is in dispute. And, it is plaintiff's burden to provide "competent proof" the value of the property at issue, i.e the Strip. *Rexford Rand Corp. v. Ancel*, 58 F.3d 1215, 1218 (7th Cir. 1995).

Based upon the per acre price of plaintiff's purchase of the Vulcan property, the Strip has a value of less than $8,500.00. (See Memorandum in Support of Motion to Dismiss at 5). Plaintiff does not dispute that this is the fair market value of the property based on the per acre purchase price plaintiff paid for its property. Rather, plaintiff argues that, if it does not have the Strip, it does not have access to the road. And, if it does not have access to the road, the value of its property – not the Strip – is decreased by approximately $5 million. It then summarily concludes that because the value of its property is decreased by almost $5 million, the value of the strip must be over $75,000.00. But, that conclusion is not supported by the appraisal attached to the Response. There is thus no competent proof that has been offered by plaintiff as to the value of the disputed Strip.

Accordingly, because plaintiff has failed to provide competent proof that the disputed Strip has a value in excess of $75,000.00, the action should be dismissed for lack of subject matter jurisdiction.

Even if the Court determined, contrary to the authority cited above, that the amount in controversy should be based on the diminution in value to plaintiff's property due to lack of

access to Joliet Road, plaintiff has not offered competent evidence as to this value.

The Seventh Circuit has held that an expert must substantiate his opinion, and has recognized that "providing only an ultimate conclusion with no analysis is meaningless." *Winters v. Fru-Con*, 498 F.3d 734, 743 (7th Cir. 2007) *quoting Clark v. Takata Corp.*, 192 F.3d 750, 757 (7th Cir.1999) (internal quotations omitted). In the instant case, plaintiff has attached a two page affidavit of an appraiser, Arthur Sheridan, in support of its argument that the amount in controversy exceeds the jurisdictional requirement. The affidavit only contains a cursory conclusion that the value to the Vulcan Property would be decreased by $4,915,400.00 if the property does not have access to Joliet Road. The affidavit does not contain any basis for such an opinion. For example, there is no discussion about what impact lack of access would have on zoning; there is no discussion about what uses would be available for the property with access as opposed to without access; and there is no indication that Mr. Sheridan conducted a market study of comparable sales to reach his conclusions. Thus, Mr. Sheridan's affidavit is not competent evidence of value (or the amount in controversy), and it should be stricken. In its absence, there is no evidence – let alone competent evidence -- that the amount in controversy meets the jurisdictional requirement of $75,000.00. Accordingly, the case should be dismissed for lack of subject matter jurisdiction.

## II.
## Peart is a Necessary Party

Plaintiff's response as to whether Peart is a necessary party is based upon a fundamental misunderstanding of defendant's argument and upon a fundamental misunderstanding of the law of adverse possession. Under the doctrine of adverse possession, a party becomes vested with title once the party has met the requirements of adverse possession for the prescribed statutory period. *Knauf v. Ryan,* 338 Ill.App.3d 265, 271, 788 N.E.2d 805 (2d Dist. 2003). Thereafter,

such title may only be transferred by deed. *Id.*

In the instant case, the complaint alleges that Peart had exclusive possession of the Strip from 1968 to 2006. (Cmplt. ¶ 24). Assuming for purposes of this motion that plaintiff's claim and allegations of adverse possession have merit, this would mean that Peart became the title owner of the strip in 1988, which is 20 years after 1968. See *Knauf, supra* 338 Ill.App.3d at 271. Thereafter, Peart could only be divested of title if he conveyed it to another or if someone else adversely possessed the property for the requisite statutory period. *Id.* [1]

Contrary to plaintiff's assertion, the complaint does not allege that Peart conveyed the disputed strip to Vulcan or to Greco. And, the deed that is attached to the complaint shows that Vulcan only acquired property north of the disputed Strip. (Cmplt. Exh. B thereto).

In its response, plaintiff claims that "Vulcan alleges that Peart sold its [sic] entire interest to Vulcan in 2006." (Response at 12). In fact, that is not what the complaint alleges. Rather, it alleges that: "[i]n 2006 the Pearts sold their interest in all of the land included in the *Vulcan Property*, including the *North Tract*, to Vulcan." (Emphasis added). The complaint defines both the "Vulcan Property" and the "North Tract", and neither definition includes the disputed Strip.

"Vulcan Property" is described as "a parcel of land...consisting of approximately 234 acres in Lisbon Township Kendall County, Illinois." The complaint further states that the legal description of "VULCAN'S parcel is attached as Exhibit B." Exhibit B is a deed from Peter Greco (not Peart) to Vulcan which contains the following legal description:

Parcel One:

THE *NORTHWEST* 1/4 OF SECTION 28, TOWNSHIP 35 NORTH, RANGE 7,

---

[1] The issue of tacking, which is raised by plaintiff, is a red herring. There is no need to tack the interests of Peart and Vulcan if Peart had adverse possession of the property for the required 20 years.

EAST OF THE THIRD PRINCIPAL MERIDIAN, LISBON TOWNSHIP, (EXCEPT THE FOLLOWING: THE SOUTH 26 RODS OF THE WEST 6 RODS THEREOF; THE EASTERLY 82.5 FEET THEREOF), SITUATED IN KENDALL COUNTY, ILLINOIS.

Parcel two:

THE SOUTH ½ OF THE SOUTHWEST 1/4 *OF SECTION 21*, TOWNSHIP 35 NORTH, RANGE 7, EAST OF THE THIRD PRINCIPAL MERIDIAN, EXCEPT THE EASTERLY 82.5 FEET AND EXCEPT THE NORTH 264 FEET FO THE WESTERLY 171 FEET OF THE EAST 253.5 FEET THEREOF; IN THE TOWNSHIP OF LISBON, KENDALL COUNTY, ILLINOIS. (Cmplt. Exh. B thereto (emphasis added)).

The complaint thus does not describe the Subject Property, which is in the southwest quarter of Section 28, as being within the "Vulcan Property." Rather, it only describes property located north of the Subject Property.

The "North Tract" is defined as "the land north of Joliet Road and in the *northwest* quarter of Section 28." (Emphasis added). It is notable that the definition of the "North Tract" does not include the "Subject Property" because the Subject Property is not in the northwest quarter of Section 28. Rather, it is "south of the half section line of Section 28" (Cmplt. ¶ 8), which puts it in the southwest quarter of Section 28. Accordingly, the complaint does not allege that Peart sold his interest in the Strip to Vulcan. Moreover, the deed which is attached to the complaint shows that Vulcan acquired property from Peter Greco, not Peart. Hence, if as Vulcan alleges Peart has an interest in the property that is the subject of the litigation by adverse possession, he is a necessary party. Indeed, given the state of the pleadings, it would be appropriate to dismiss Count III because plaintiff alleges no facts which show that it has a claim to adverse possession for the reasons stated above.

### III.
### Abstention

Whether the court should abstain in this case largely rests on whether the Court determines that

Peart is a necessary party, and, if so, how he is to be aligned for purposes of diversity.

As discussed, Peart is a necessary party because Vulcan has alleged facts (i.e. adverse possession by Peart) that show that Peart has an interest in the disputed Strip. See *Hugoton Energy Corp. v. Plains Resources, Inc.*, 141 F.R.D. 320 (D.Kan. 1991)("[a]s a general rule, in actions to quiet title, all persons claiming an interest in the subject property are considered indispensable."). Proper alignment however is difficult to discern.

For jurisdictional purposes, the court must align those parties whose interests coincide respecting the "primary matter in dispute." *Prudential Real Estate Affiliates, Inc. v. PPR Realty, Inc*, 204 F.3d 867, 873 (9th Cir. 2000). In the instant case, the primary dispute is who has title to the disputed strip of property. If either Peart or Vulcan is to establish title, it must be established through the adverse possession of Peart. This counsels in favor of Peart being aligned as a plaintiff. Furthermore, both Vulcan and Peart are being represented by the same attorneys, which suggests that their interests are aligned. Moreover, it would be untenable to have a plaintiff and defendant represented by the same attorneys.[2] Yet, while Vulcan has alleged facts that show only Peart has a claim based on adverse possession, Vulcan is the one claiming a right to the property. Vulcan and Peart would thus seem to be potentially adverse to one another.

If Peart is aligned as a plaintiff, diversity is destroyed because both Peart and Shaw are Illinois residents. In that case, the Court must decide whether Peart is indispensable. An indispensable party is one (1) without whom the court would be unable to accord relief to the

---

[2] At this early stage of the proceedings, it is difficult to determine exactly what is transpiring between Peart, Vulcan, and their attorneys. As discussed, the facts alleged in the complaint show that Peart has an interest in the Strip, which Vulcan claims has a value of somewhere between $75,000.00 and $5 million. But, it is Vulcan that is asserting the claim in court, arguing that Peart does not have an interest in the disputed strip. Given that Peart and Vulcan are both being represented by the same attorneys, one wonders whether Mr. Peart has been advised of his potential claim or the value that Vulcan has put on it.

existing parties, or (2) who claims an interest in the action and whose interest may be compromised or whose absence may result in inconsistent obligations among the existing parties. Generally, a person who has an interest in title to property that is subject to dispute is considered indispensable. *Hugoton Energy Corp. v. Plains Resources, Inc.*, 141 F.R.D. 320 (D.Kan. 1991)("[a]s a general rule, in actions to quiet title, all persons claiming an interest in the subject property are considered indispensable."). Furthermore, it is evident that there may be inconsistent obligations among the existing parties if Peart is not made a party to the instant action, For example, the state court may find that adverse possession is not established as to Peart, while the federal court finds that adverse possession is established. Peart should thus be viewed as indispensable and the case should be dismissed.

In the event that Peart is not made a party, or cannot be made a party, to the instant action, it is a virtual certainty that the quiet title action filed in state court will proceed. That being the case, this Court should stay all proceedings in this case to allow the matters to be determined in the state case where all parties can be joined.

## IV.
## Statute of Limitations

Plaintiff argues that its claim for reformation is not barred by the statute of limitations because it did not own the Vulcan Property until 2006. Plaintiff however misses the point of defendant's argument. In order for plaintiff to succeed, i.e. to acquire the disputed strip, there must be a reformation not only of plaintiff's deed but of every deed that goes back to a common ownership. And, the complaint acknowledges that such deeds go back to at least 1964.[3] (See

---

[3] Reformation of only plaintiff's deed would do no good unless the grantor had title to the disputed strip which it could have conveyed at the time the deed was executed. *O'Connell v. Chicago Park Dist.*, 376 Ill.550, 557, 34 N.E.2d 836 (1941).

Cmplt. ¶6 ("Since 1964, SHAW has possessed all of the land that abuts Joliet Road to the south....")).

Plaintiff's argument that the limitations period should not begin to run until it purchased the property misapprehends the purpose and operation of limitations periods. One of the purposes of a limitations period is "to secure repose for defendants-to let them go about their business, after a definite time, untroubled by fear of being sued...." *Village of Bellwood v. Dwivedi*, 895 F.2d 1521, 1527 (7th Cir. 1990). Thus, the Illinois Supreme Court has stated that statutes of limitation run against the right of action not the holder thereof. Accordingly, once a statute of limitations has run, it may not be revived. *Sundance Homes, Inc. v. County of DuPage*, 195 Ill.2d 257, 746 N.E.2d 254 (2001).

Here, the complaint alleges facts which show that the claim for reformation would have run on defendant's deed as of 1974 – ten years after the 1964 deed. However, under plaintiff's theory, the limitations period would revive anytime that there was a new purchaser of one of the properties. In short, plaintiff's theory is one that perpetuates uncertainty. Accordingly, in the event that the court retains jurisdiction, Count I should be dismissed as being barred by the statute of limitations.

## V.
## Paper Title

Plaintiff's argument with respect to the validity of Count II is nothing short of an attempt to rewrite the applicable statute. Section 13-109, under which Count II is brought, specifically states that a party may only take under the section "to the extent and according to the purport of his or her *paper title*." 735 ILCS 5/13-109 (emphasis added). Yet, plaintiff argues that the legal description in its paper title is irrelevant. (See Response at 9-10).

In *Cienki v. Rusnak*, 398 Ill. 77, 85, 75 N.E.2d 372 (1947), the Illinois Supreme Court

recognized that paper title was an essential requirement stating:

> Under the statute, as quoted, ownership of land by possession and payment of taxes under claim and color of title can be obtained only to the extent and according to the purport of the *paper title*. [Citation.] Defendant claims title to the disputed strip and must, therefore, show a *paper title in himself*. The paper title to all of lot 10 acquired by defendant's grantor as a result of an error in the master's deed following the foreclosure proceedings is not available to defendant unless he can show a conveyance from his grantor broad enough to cover the 20 feet in question. The deed under which defendant claims does not purport to include the disputed premises, because, as previously indicated, it establishes the south line of his property as being only 12 feet, not 32 feet, south of the north line of the frame garage. (Emphasis added).

*Cienki* also refutes plaintiff's apparent contention that Vulcan can rely upon other deeds to which it is not a party. (See Response at 10). As stated above, the party claiming adverse possession under section 13-109 must "show a paper title in [itself]." Thus, the descriptions of the property in the conveyances to the County are irrelevant for purposes of Count II. Accordingly, if the Court retains jurisdiction, Count II should be dismissed because plaintiff's paper title does not include the disputed strip.

JOHN SHAW

By: _____s/James A. Murphy_____
One of His Attorneys

James A. Murphy
Atty. No. 06195324
MAHONEY, SILVERMAN & CROSS, LTD.
822 Infantry Drive, Suite 100
Joliet, IL 60435
(815) 730-9500

John H. Anderson
SEYFARTH SHAW LLP
131 South Dearborn StreetSuite 2400Chicago, Illinois 60603
(312) 460-5000