## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| VULCAN LANDS, INC., a New Jersey Corporation, | ) ) ) | |
| Plaintiff, | ) ) | |
| | ) | No. 07-C-6263 |
| v. | ) ) | HONORABLE DAVID H. COAR |
| CHICAGO TITLE AND TRUST CO., as t/u/t/a 1097435 dated April 14, 1992, JOHN SHAW, and UNKNOWN OWNERS AND BENEFICIARIES, | ) ) ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Vulcan Lands, Inc. ("Vulcan" or "Plaintiff") brought this action for declaratory and injunctive relief against Defendants Chicago Title and Trust Co. as trustee ("Chicago Title"), John Shaw ("Defendant" for purposes of this opinion), and other unknown parties (collectively "Defendants"). Now before this Court is Defendant John Shaw's motion to dismiss or in the alternative to stay proceedings (Docket No. 15). Defendant has advanced several grounds according to which he believes this case should be disposed of, including: (1) failure to establish the requisite amount in controversy for assertion of 28 U.S.C. § 1332 subject matter jurisdiction; (2) propriety of abstention in light of parallel state court proceedings, pursuant to *Colorado River Water Conservation Dist. v. U. S.*, 424 U.S. 800, 96 S.Ct. 1236 (1976); and failure to state a claim for which relief can be granted, pursuant to Fed. R. Civ. P. 12(b)(6).

For the reasons stated below, Defendant's motion is DENIED in part and GRANTED in part.

1.    **FACTS**[1]

Plaintiff Vulcan owns a parcel of land consisting of approximately 234 acres in Lisbon

Township, Kendall County, Illinois, some part of which it plans to develop into a new limestone

quarry site.  While this parcel is made up of two separately surveyed parcels, for simplicity's

sake this Court is concerned only with Parcel 1 ("the Vulcan Property").  South of this parcel is

another belonging to a trust administered by Chicago Title for Shaw's benefit ("the Shaw

Property").  The Shaw Property consists of approximately 385 acres which are leased out for a

limestone quarry operation.  The two properties are located in Section 28, Township 35 North,

Range 7 East of the Third Principal Meridian ("Section 28").  In different conveyances and at

different points in time, either Joliet Road or the half section line of Section 28 served as a

dividing line across the west half of the Section; the half section line was generally used in

formal conveyances, while parties' possession and use of property was divided by Joliet Road,

separating land now possessed by Vulcan to the north ("North Tract") and that which Shaw

possesses to the south ("South Tract").[2]  The incongruent methods for dividing this land have

created the present conflict.

---

[1]These facts are derived from Plaintiffs' complaint and, for the purposes of this motion, are assumed to be true.  *See Davis Companies v. Emerald Casino, Inc.*, 268 F.3d 477, 479 (7th Cir. 2001).

[2]There is some confusion in the record as to the manner in which the property is to be referred.  *See, e.g.*, Compl. ¶¶ 7, 18-30 (generally failing to distinguish between the scope of property conveyed and that which is or was possessed).  For purposes of this Memorandum Opinion and Order, this Court will refer to the parties' property held under color of title as "the Vulcan Property" and "the Shaw Property," while that which is treated as if possessed – *i.e.*, abiding by Joliet Road as the boundary – will be referred to as the "North Tract" and "South Tract."

The North and South Tracts altogether were previously owned by members of the Hall family.  Early on, the public had use of a length of Joliet Road traveling across the Halls' land by prescriptive easement.  In 1958, the Halls entered into an agreement with Kendall County wherein the Halls conveyed easements to the County for Joliet Road pursuant to deed ("1958 Hall Deeds").  The 1958 Hall Deeds conveyed a 70 foot strip of land described as follows:

> A strip of land along a portion of half section line of sec. 28, twp. 35 N.,
> R. 7E, of 3rd P.M. in Kendall County from Sts. 120 + 21 to Sts. 132 + 72
> said strip being of a uniform width of 70 ft. one half lying North and one
> half lying South of the centerline of Roadway Improvement.

(Compl. Ex. D (emphasis added).)  However, while this conveyance assumed that the section line and the centerline of the already existing roadway were coterminous, Joliet Road in fact fell approximately forty feet to the south.  *See* attached diagram *infra* p. 22.  As a result, when the Halls' land was later divided into the North and South Tracts, based on the 1958 Hall Deeds, the mistaken assumption they contained would ultimately result in the present conflict; while use and possession of the parcels on either side of Joliet Road predictably extended up to the edge of the road and public easement, conveyances divided the parcels according to the section line, so that the titles allowed for a five foot strip of land north of the roadway that was actually part of the land to the south.

By 1968, William C. Peart, Nora Peart, and/or other members of the Peart family owned all of the land referenced as the Vulcan Property through a series of purchases.  The deeds of conveyance purported to grant the Pearts title to the northwest quarter of Section 28.  Upon obtaining this title, the family used the entire North Tract for a home and a farm.  At some point in the property's history, either the Peart family or previous owners established a fence line approximately 35 feet north of the center line of Joliet Road.  Between 1968 and 2006, the

family utilized the center line of Joliet Road as the southern boundary of the property; they apparently believed that there was no difference between the road's center line and the half section line that in fact runs parallel to and north of the road.

The land that the Peart family expanded onto is approximately five feet in width and runs between the Section Line (intended to serve as the southern edge of the parcel in the 1958 Hall Deeds) and the northern edge of Joliet Road (amounting to the effective dividing line between the North and South Tracts at the center of Joliet Road less half the permanent easement). This strip of land is the subject of the dispute in this case ("Subject Property"). Between 1968 and 2006 the Peart family acted toward the Subject Property as if it were a part of its deeded property. Over the course of those years the family possessed the land, paid all assessed real estate taxes, and used the land in a manner consistent with farming and living. In 2006 William J. Peart (presumably the son of William C. Peart, hereinafter "Peart") sold his interest in the Vulcan Property to Vulcan. Since then, Vulcan has acted as if it possessed all of the North Tract – both the Vulcan Property and the Subject Property – by using the land, continually possessing it, and paying taxes on it. Vulcan intends to develop a limestone quarry on the North Tract.

There is no indication that Shaw or any predecessor in interest related to the South Tract claimed ownership over the Subject Property. Despite a 1971 survey that revealed the discrepancy between Joliet Road and the center line of Section 28, no action was taken to correct the boundary. At all relevant times, the Shaw property had constructed on it a fence, running approximately 35 feet south of Joliet Road's center line. At no point has Shaw paid taxes on the Subject Property or otherwise acted as the owner of it.

2.    **ANALYSIS**

Defendant argues that this case should be dismissed based on: (a) lack of subject matter jurisdiction; (b) propriety of abstention; (c) failure to join a necessary party; and (d) failure to state a claim.  In the alternative, Defendant argues that the case should be stayed pending resolution of the parallel state court action.

a.    <u>Amount in Controversy</u>

Defendant maintains that this Court lacks subject matter jurisdiction because the $75,000 amount in controversy requirement of 28 U.C.C. § 1332 is not met, and that dismissal is therefore appropriate pursuant to Fed. R. Civ. P. 12(b)(1).  The Parties generally agree that the amount in controversy is to be determined by evaluating the value attributable to the Subject Property.  Defendant, however, maintains that Plaintiff has failed to properly calculate that value, insofar as it should be based solely on the per-acre price of the property multiplied by the total area of the Subject Property.  In the alternative, Defendant argues that there is insufficient support for Plaintiff's estimate of the value of the property.  Neither of these arguments is compelling.

In a suit for declaratory or injunctive relief, "the amount in controversy is measured by the value of the object of the litigation."  *Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 333, 347, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977).  The Seventh Circuit requires that either of two perspectives be used to determine the "value of the object" – "what the plaintiff stands to gain, or what it would cost the defendant to meet the plaintiff's demand."  *Macken ex rel. Macken v. Jensen*, 333 F.3d 797, 799-800 (7th Cir. 2003); *see also Uhl v. Thoroughbred Tech. and Telecomm., Inc.*, 309 F.3d 978, 983 (7th Cir. 2002) ("[I]t is established that the

jurisdictional amount should be assessed looking at either the benefit to the plaintiff or the cost to the defendant of the requested relief-the so-called 'either viewpoint' rule.").

Defendant ignores this settled Seventh Circuit principle, and therefore fails to acknowledge that determining the value of the Subject Property *to Plaintiff* is an acceptable means of satisfying the required amount in controversy. *See Uhl*, 309 F.3d at 983-84 (considering pecuniary consequences to the parties). Plaintiff has provided evidence that denial of its claim over the disputed land would amount to a loss of $4,915,400.00 to its planned use of the land as a quarry. (*See* Pl.'s Resp. Ex. C ("Sheridan Aff.").) This evidence, if supported, satisfies the amount in controversy required for finding subject matter jurisdiction under 28 U.S.C. § 1332. *See Glover v. PremierBank*, 59 Fed.Appx. 850, 852 (7th Cir. 2003) (plaintiff must provide "competent proof" that it has satisfied the required amount in controversy).

However, Defendant claims that this estimate is unsupported, in that Plaintiff has not provided sufficient evidentiary support, and has not considered potential alternative uses for the land should his claim over the Subject Property fail. Admittedly, Plaintiff has advanced only a single affidavit, written by appraiser and real estate agent Arthur Sheridan. (*See* Sheridan Aff.) Also, the affiant provides little basis for his conclusion that the loss of access to Joliet Road would result in a net loss of nearly $5 million. However, at this early stage a sworn affidavit, so high above the required minimum value and absent any countervailing evidence, provides "competent proof" of value. Defendant asks this Court to require affiant to "substantiate his opinion," but cites only an appellate decision requiring an expert to be more thorough in its analysis at summary judgment. *See Winters v. Fru-Con Inc.*, 498 F.3d 734 (7th Cir. 2007). Defendant also cedes much ground by pointing to all of the determinants of value that the affiant

might have considered in its analysis, yet provides no evidence of its own as to what these values might be. *The Home Depot, Inc. v. Rickher*, 2006 WL 1727749 at *1 (May 22, 2006 7th Cir. 2006) (requiring that the Plaintiff's claim of damages be disproved "to a legal certainty") (citing *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289, 58 S.Ct. 586, 590, 82 L.Ed. 845 (1938)). At this early stage in the proceedings, there is no reason to doubt a signed affidavit attesting to the value of this controversy for Plaintiff.

Defendant repeatedly returns to its argument that Plaintiff wrongly conflates the potential decrease in value of the Vulcan property with that of the value of the small strip of land in dispute: "[Plaintiff] summarily concludes that because the value of its property is decreased by almost $5 million, the value of the strip must be over $75,000,000....[B]ecause plaintiff has failed to provide competent proof that the disputed Strip[sic] has a value in excess of $75,000.00, the action should be dismissed for lack of subject matter jurisdiction." This misstates the only relevant question at this stage, which is the value *of the controversy*, not the value of the strip of land at its center. Because Plaintiff has advanced sufficient proof to show that it stands to lose approximately $5 million on its intended use of the Vulcan property upon denial of relief, the amount in controversy is satisfied.

Defendant's motion to dismiss for lack of subject matter jurisdiction is DENIED.

b.      Peart as a Necessary Party

Because this Court finds it proper to stay this action, as discussed below, it is unnecessary to determine at this time whether dismissal under either Fed. R. Civ. P. 12(b)(6) or 12(b)(7) is warranted. Nonetheless, before addressing the determinative question of abstention, it is practical to first discuss in general terms whether Peart – as the prior owner and potential

adverse possessor of the property in question – is necessary to this action.  It must first be noted that Peart seems to have disclaimed any and all interest in the Subject Property.  (*See* Compl. ¶ 27; Pl.'s Resp. Ex. E (Peart's State Court Mot. to Dismiss)).  However, this Court must still consider the nature of Plaintiff's claims to determine what Peart's involvement in the case would be.

Plaintiff seeks declaratory and injunctive relief that would make it the rightful owner of the Subject Property.  Any such relief is to be achieved by way of: reformation of the conveyance to Vulcan (Count I); adverse possession under color of title and payment of taxes (Count II); or adverse possession via conventional means (Count II).  Peart's role, if any, is different with respect to each of these three approaches, therefore each will be considered in turn to determine whether or not he should or must be involved in the dispute.

i.    *Peart and Count I: Reformation*

According to the record as it now stands, the claim for reformation in Count I will only serve as an independent basis for relief if Plaintiff can show: (1) that Peart adversely possessed the Subject Property, gaining title to it; and (2) that he conveyed that title to Vulcan.

Typically, in an action for reformation of a deed, a grantor who has transferred his or her entire interest in property is not considered an indispensable and/or necessary party to subsequent disputes, as the successor in interest is able to assert any relevant claim on the grantor's behalf.  *See, e.g., Harris v. Nichols*, 714 S.W.2d 540 (Mo. App. W.D. 1986) (citing *Shaffer v. Dalrymple*, 507 S.W.2d 65, 70 (Mo. App. 1974).  Presumably, therefore, Plaintiff would argue that Count I can be resolved in spite of Peart's absence due to his apparent lack of interest in the property.  However, this presupposes an answer to a question that is still in

dispute, *i.e.*, whether or not Peart in fact transferred his interest in the Subject Property.  As

Defendant discusses, and Plaintiff generally fails to acknowledge, the terms of the deed now in

the record do not explicitly convey an interest in the Subject Property to Vulcan, and instead

only describes the Vulcan Property that it neighbors.  (*See* Def.'s Reply at 3-5.)

Peart arguably *intended* to convey any and all interest related to his deeded property –

including whatever interest he had in adjoining property – but that is by no means a foregone

conclusion.  The requested relief of reformation could arguably resolve this question, effectively

conveying Peart's adversely possessed tract to Vulcan.  However, that sought-after reformation

is not a form of relief that can be pursued by way of an action against a non-party to the contract.

*See, e.g., Wurtzel v. Richmond*, 717 F.Supp. 1 (D.D.C. 1989) (quoting Powell on Property at §

901[3] for the proposition that "reformation is available only against the parties to the

transaction"); *Zurbuchen v. Teachout*, 136 Wis. 2d 465, 402 N.W.2d 364 (Wis. Ct. App. 1986).

Therefore, with respect to any attempt at contract reformation, Peart is a necessary party.

ii.     *Peart and Counts II & III: Adverse Possession*

In the alternative, Plaintiff may succeed by way of the adverse possession claims of

Counts II and III.  Two things are clear about both of these claims.  First, neither of the required

the statutes of limitations can be met independent of Peart's possession of the property, as

Plaintiff has only been in possession of its parcel since 2006.  *See* 735 ILCS 5/13-109 (requiring

seven years of adverse possession); 735 ILCS 5/13-101 (requiring twenty years).  Therefore,

with respect to either Count II or Count III, Plaintiff will have to show that tacking of its

possession of the land to that of its predecessor(s)[3] in interest is warranted. Second, Plaintiff's claims of adverse possession are mutually exclusive of any claim Peart might have to the Subject Property on that basis. As Defendant points out, once the elements of adverse possession have been met, title transfers to the possessor automatically, and can only be divested thereafter via conveyance – as would fall under Count I of this suit – or adverse possession – which is unavailable to Vulcan due to its brief tenancy. *See generally Cassidy v. Lenahan,* 294 Ill. 503, 128 N.E. 544 (1920); *see also Carroll v. Rabberman,* 240 Ill. 450, 88 N.E. 995 (1909) (in which it is noted that, after the Statute of Limitations has run in favor of a claimant, his title cannot be divested by his own declarations). Therefore, to succeed through adverse possession Plaintiff must show that the requirements under either 735 ILCS 5/13-109 or 735 ILCS 5/13-101 were met during its – and only its – possession of the property.

The two claims of adverse possession require that Vulcan take similar but distinct paths toward proving its case. Count II requires that Vulcan show that: (1) Peart did not satisfy the demands of adverse possession; (2) the conveyance to Vulcan warrants tacking; and (3) Vulcan and its predecessors in interest satisfied all the necessary elements of 735 ILCS 5/13-109, including color of title and payment of taxes. Success with respect to Count III requires Vulcan to show that: (1) Peart did not satisfy the demands of adverse possession; (2) the manner of

---

[3]There is some confusion as to whether Plaintiff can trace its interest in the contested properties to a deed conveying the property from Peart to Vulcan. While Vulcan references a transfer that took place between these two parties, the only deed introduced into the record lists "Peter M. Greco" as the grantor. (*See* Compl. Ex. B.) Nonetheless, for present purposes this Court will assume that the unproduced conveyances do not contradict the issues of privity or tacking discussed in this Memorandum Opinion and Order.

conveyance to Vulcan warrants tacking; and (3) Vulcan and its predecessors in interest satisfied all the necessary elements of 735 ILCS 5/13-101.

Adverse possession according to the terms of 735 ILCS 5/13-109 requires: "(1) claim and color of title, made in good faith; (2) payment of taxes for seven successive years; and (3) continuous, uninterrupted, hostile possession for the statutory period adverse to the opponent." *Malone v. Smith*, 355 Ill.App.3d 812, 575, 823 N.E.2d 1158, 1161 (Ill. App. 4 Dist. 2005) (citing *Harlan v. Douthit*, 379 Ill. 15, 21, 39 N.E.2d 345, 348 (1942)).

The parties dispute the role that "color of title" plays with respect to the deed in this case. Plaintiff argues that demanding that the deed's description explicitly reference the Subject Property would be tantamount to requiring that it provide a true and accurate deed, mooting adverse possession. Plaintiff is incorrect. Whether or not there was some mistake in the way that the deed was drafted, there was still no paper title according to which Plaintiff might have believed it was the owner of the Subject Property at any point. The Illinois statute clearly limits adverse possession via the shorter 7-year statute of limitations "to the extent and according to the purport of his or her paper title." *See Cienki v. Rusnack*, 398 Ill. 77, 85, 75 N.E.2d 372 (1947) (citing 735 ILCS 5/13-109); *see also Nilson Bros. v. Kahn*, 314 Ill. 275, 279, 145 N.E. 340 (1924) ("When possession is asserted to have been under color of title, the actual limits described in the writing set up as color will not be extended to embrace other land not included in the writing merely because such land lying beyond the limits described in the writing has been taken possession of under a mistake and occupied for over seven years, although the party seeking to prescribe acted in good faith in extending his possession beyond the limits of the tract of land actually defined in his conveyance, to contiguous land.").

Just as in *Cienki*, the deed's effectiveness in supporting adverse possession is limited to the bounds expressly stated therein, and cannot provide color of title for anything that lies beyond those bounds.  *See Cienki*, 398 Ill. at 85-87.  For outlying lands, putative adverse possessors must generally resort to the longer statute of limitations provided by ILCS 5/13-101. Plaintiff could at least argue that the bounds of its conveyance were wider than is apparent from the deed's language if it could point to additional documentation or discussions that expand the scope of the property, but instead Vulcan refers only to "the 1958 Hall Deeds and the history of possession and occupation of the Subject Property," neither of which relates to the color of title possessed by Plaintiff during its ownership.  In any event, for present purposes this Court need merely conclude that Count II ultimately depends on reforming prior conveyances involving parties not named in this dispute.  As discussed previously, such parties are necessary to the action.

With respect to the claim of adverse possession found in Count III, deed or color of title is not required to accomplish adverse possession where the total twenty year statute or limitations can be met through tacking.  *Weber v. Anderson*, 73 Ill. 439, 1874 WL 9006 at *2-*3 (1874).  There are some limits to when tacking is allowed, such that privity must be shown between those whose possession is offered in satisfaction of the statute of limitations.  *Gerbracht v. Lake County*, 328 Ill. 399, 411-12, 160 N.E. 1 (1928).  However, tacking will follow from a delivery of possession of land not described in the deed, which seems to have been satisfied in this case.  *Maremont v. Ovenu*, 1928, 160 N.E. 572, 329 Ill. 374.  There is essentially no dispute that possession was continuous between Peart and Vulcan – even considering intervening possessors – and it would therefore appear that tacking is possible independent of reformation of

conveyances. For this reason, it is arguable that Plaintiff's Count III is not dependent on reformation and can move forward without Peart as a party.

> iii.    *Peart Generally Necessary to this Case*

While some claims might arguably survive without Peart, he is nonetheless necessary for proper resolution of a majority of the issues in this case. In addition, at this stage it appears unlikely that Plaintiff will be able to satisfy adverse possession independently from Peart, as the length of time spent in possession of the Subject Property and ostensibly meeting all other demands of adverse possession means that Peart likely won title at some point prior to 2006. It is therefore likely that the only claim on which Plaintiff would be ultimately successful is that which depends on transfer of title through contract reformation, and which requires Peart's involvement. As a general matter, Peart is necessary to the dispute whether or not he is interested.

> c.    <u>Abstention</u>

The Colorado River doctrine authorizes a "district court to dismiss or stay an action when there is an ongoing parallel action in state court." *LaDuke v. Burlington N. R.R. Co.*, 879 F.2d 1556, 1558 (7th Cir. 1989).

When considering whether this Court should abstain in light of a state action, it is first necessary to determine that the other action is in fact parallel. *See Colorado River Water Conservation District v. United States*, 424 U.S. 800, 818, 96 S.Ct. 1236, 1246, 47 L.Ed.2d 483 (1976); *Clark v. Lacy*, 376 F.3d 682, 685-86 (7th Cir. 2004). Neither party disputes this point, and this Court sees no reason to doubt that the state court proceeding would quiet title and "dispose of all claims presented in the federal case." *Id.* at 686. In the state action, Defendant

Chicago Title – there plaintiff – seeks in each of two counts "judgment quieting title and declaring that [Chicago Title] is the sole rightful owner of the property lying between the north edge of Joliet Road and the [section line]." (Def.'s Dismiss Mem. Ex. F at 5, 9.) The issues discussed in that complaint appear to be identical to those now before this Court, *i.e.*, adverse possession and conveyance of title. (*See generally id.*) Therefore, "substantially the same parties are contemporaneously litigating substantially the same issues in another forum." *Calvert Fire Ins. Co. v. Am. Mut. Reinsurance Co.*, 600 F.2d 1228, 1229, n. 1 (7th Cir.1979). The two actions are sufficiently parallel for continued consideration under *Colorado River*.

Beyond that threshold determination, abstention depends on a variety of factors, including: (1) whether the state has assumed jurisdiction over property; (2) the inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; (4) the order in which jurisdiction was obtained by the concurrent forums; (5) the source of governing law, state or federal; (6) the adequacy of state-court action to protect the federal plaintiff's rights; (7) the relative progress of state and federal proceedings; (8) the presence or absence of concurrent jurisdiction; (9) the availability of removal; and (10) the vexatious or contrived nature of the federal claim. *Clark*, 376 F.3d at 685. No one issue in this analysis is determinative. Rather, this Court must consider all factors in light of the circumstances of the case as a whole and by way of a non-mechanical approach. *Id.* at 687.

Abstention is warranted under *Colorado River* only in exceptional circumstances.[4]  *Id.* at 685 (quoting  *LaDuke v. Burlington Northern R. Co.*, 879 F.2d 1556, 1559 (7th Cir. 1989)).  A district court's decision whether to abstain "because of parallel state-court litigation does not rest on a mechanical checklist, but on a careful balancing of the important factors as they apply in a given case, with the balance heavily weighted in favor of the exercise of jurisdiction."  *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 16, 103 S.Ct. 927, 937, 74 L.Ed.2d 765 (1983).

    i.   *Whether state court assumed jurisdiction over property*

Neither party has addressed the question of whether or not the state court has asserted jurisdiction over property.  Defendant simply alludes to the fact that the same *res* is involved – a fact that arises necessarily from the parallel nature of the cases – without going to the ultimate question of whether the state court has formally asserted jurisdiction over property.  (Def.'s Dismiss Mem. at 8.)  Plaintiff does not address the issue.  In light of that silence, this Court will assume that the state court has not asserted its authority over the property in question.

This factor weighs against abstention.

---

[4]It is not lost on this Court that Plaintiff seeks largely declarative relief, and that a district court has greater discretion to abstain when faced with that requested remedy.  *See Wilton v. Seven Falls Co.*, 515 U.S. 277, 286-287, 115 S.Ct. 2137, 132 L.Ed.2d 214 (1995) (referring to the Declaratory Judgment Act as "an enabling Act, which confers a discretion on the courts rather than an absolute right upon the litigant.").  However, because Plaintiff also seeks injunctive relief falling outside the jurisdiction afforded by the Declaratory Judgment Act, this Court will apply the more restrictive standard of *Colorado River*.

ii.     *Inconvenience of the federal forum*

With respect to the inconvenience of the federal forum, Defendant asserts that "the state

court is more convenient."  (Def.'s Dismiss Mem. at 8.)  However, Defendant does not address

the only relevant question here – whether the federal forum is *in*convenient.  *Clark*, 376 F.3d at

685.  Defendant also suggests that the Kendall County court serving as the venue in the state

action is closer to the different parcels in question, making it more convenient "to the extent the

court would need to view the property for a better understanding of the issues."  (Def.'s Dismiss

Mem. at 8.)  This Court sees no reason why a visit to the site would be necessary in this case,

where there is no dispute concerning the physical nature of the properties and all rulings will

likely be made based on deeds and testimony.

This factor weighs against abstention.

iii.     *Desirability of avoiding piecemeal litigation*

"Piecemeal litigation occurs when different tribunals consider the same issue, thereby

duplicating efforts and possibly reaching different results ..."  *Day v. Union Mines, Inc.*, 862

F.2d 652, 659 (7th Cir. 1998) (quoting *Am. Int'l Underwriters (Philippines), Inc. v. Continental

Ins. Co.*, 843 F.2d 1253, 1258 (9th Cir. 1998)).  It is of course not desirable to have both federal

and state actions, based on the same essential facts, moving forward.  There is essentially no

difference between the ultimate result of both the state and federal proceedings, *i.e.*, to quiet title

in the Subject Property.  To allow both to proceed would be inefficient and wasteful.  *See Clark*,

376 F.3d at 687 (finding that where "two courts would oversee similar pre-trial motions and

discovery matters and two different triers of fact would be asked to consider the same issues,

evidence and witnesses...that this sort of redundancy counsels in favor of a stay") (citing

*Caminiti & Iatarola v. Behnke Warehousing, Inc.*, 962 F.2d 698, 700-01 (7th Cir.1992)).

Defendant argues that the federal action was filed first and that it is therefore the state action that

should act to avoid piecemeal litigation.  (*See* Pl.'s Resp. at 5-6.)  However, Vulcan advances no

evidence or citation to show that the state court *will* do so, or show how this fact should

otherwise impact this Court's application of *Colorado River*.

       This factor weighs heavily in favor of abstention.

              iv.      *Order in which jurisdiction was obtained by the concurrent forums*

       The federal action was filed on November 5, 2007, while the action in state court was

filed November 28, 2007.  (*See* Def.'s Dismiss Mem. at 9; Ex. 7.[5])  While this difference in filing

dates would normally undermine a finding of abstention, Defendant argues that the actual filing

date is irrelevant because only the state proceedings include all parties necessary to reach

resolution of this dispute.  There is some merit to Defendant's argument.  While the federal

complaint was filed prior to the state one, failure to join Peart will likely return these

proceedings to square one, in that his absence and necessity would require the filing of an

amended complaint.  Plaintiff should not, therefore, reap the benefits of being first in time where

the proceedings have not commenced in any significant way, and the actual difference in filing

dates is relatively short.

       This factor weighs neither for nor against abstention.

---

     [5]There is in fact no legible date on the state complaint attached as Exhibit 7.  However,
Plaintiff has not contradicted the accuracy of this date.

*v.        Source of governing law, state or federal*

Other than federal concerns at the heart of this Court's diversity jurisdiction, only state

level issues are invoked in this dispute.  "[A] state court's expertise in applying its own law

favors a *Colorado River* stay."  *Day v. Union Mines, Inc.*, 862 F.2d 652, 660 (7th Cir.1988).

This factor argues for abstention.

*vi.        Adequacy of state court action to protect the federal plaintiff's rights*

There is no indication that the state court cannot protect Plaintiff's property rights under

state-level principles of adverse possession or contract law.

This factor argues for abstention.

*vii.        Relative progress of state and federal proceedings*

There is little in the record regarding the current status of the state court proceedings.

The most recent information provided to this Court indicates that Plaintiff presented a motion to

dismiss in the state court proceedings on February14.  Therefore, at both the state and federal

levels it appears preliminary motions have been heard, but no discovery has taken place.  If

anything, it would appear that the state case is further along, as all necessary parties appear to be

joined in that action.  Rather than simply evaluate the dates of filings in the parallel actions, "we

should not look merely to the dates on which the two actions were filed, but instead should act in

a 'pragmatic, flexible manner with a view to the realities of the case at hand.'"  *Illinois Bel. Tel.*

*Co. v. Illinois Commerce Comm'n*, 740 F.2d 566, 570 (7th Cir. 1984) (quoting *Moses*, 460 U.S.

at 21)).  As a practical matter, the state action appears to be further along.

This factor argues for abstention.

*viii.        Presence or absence of concurrent jurisdiction*

Neither party has argued this point, and it appears from the record that both state and federal courts in this case hold valid jurisdiction over the case.

This factor argues for abstention.

ix.     *Availability of removal*

In the state case, both Vulcan (currently Plaintiff) and Peart are listed as defendants while Chicago Title is the plaintiff.  Because both Peart and Chicago Title are Illinois residents the case is not removable to a federal court by way of diversity jurisdiction.  *See* 28 U.S.C. § 1441; *Tylka v. Gerber Products Co.*, 211 F.3d 445, 448 (7th Cir. 2000) ("We begin with the well-known rule that removal is proper over any action that could have been filed originally in federal court."); *Pisciotta v. Old Nat. Bancorp*, 499 F.3d 629 (7th Cir. 2007) (citing *Strawbridge v. Curtiss*, 3 Cranch 267, 7 U.S. 267, 2 L.Ed. 435 (1806) for the proposition that the general federal diversity statute requires complete diversity).  Removal is therefore impossible, which favors abstention.  *See Clark*, 376 F.3d at 688; *Day*, 862 F.2d at 659-60 (citing a "policy against hearing a federal claim which is related to ongoing non-removable state proceedings").

This factor argues for absention.

x.     *Vexatious or contrived nature of the federal claim*

Plaintiff likely erred by not including Peart as a party to this action.  However, this mistake does not rise to the level of having created a "vexatious or contrived" claim.  It would therefore be improper to lay fault at Plaintiff's feet for choosing to file this case in Federal court.

This factor argues neither for nor against abstention.

xi.     *Weighing of the* Colorado River *factors*

After examining all factors relevant in determining whether to issue a stay, it seems clear that the factors weigh in favor in granting a temporary stay. As an initial matter, the Court notes that it does not take lightly its duty to exercise jurisdiction in cases that are properly before it. As the Seventh Circuit has noted, "our task is not to find some substantial reason for the exercise of federal jurisdiction by the district court; rather, the task is to ascertain whether there exist exceptional circumstances, the clearest of justifications, that can suffice under *Colorado River* to justify the surrender of that jurisdiction." *TruServ Corp. v. Flegles, Inc.*, 419 F.3d 584, 591 (7th Cir. 2005) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 25-26, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983)) (quotations omitted). However, the Court appreciates the importance of "wise judicial administration, giving regard to the conservation of judicial resources and comprehensive disposition of litigation." *Colorado River*, 424 U.S. at 817.

Of the ten factors listed above, numbers three, five, six, seven, eight, and nine weigh in favor of abstention. Some of these factors argue more strongly against proceeding in the federal venue – particularly avoidance of piecemeal litigation and the clearly state-level concerns involved. In addition, and perhaps most importantly, while the end goal of quieting title to the Subject Property will likely be achieved in either venue, only the state proceedings are now structured in such a way as to effectively move forward and accomplish that task. While abstention is only proper in extreme circumstance, this Court finds that these issues warrant granting a stay in this case. *See Clark*, 376 F.3d at 687-88 (upholding stay to avoid piecemeal and duplicative litigation, allow state law issues to be resolved by a state court, and prevent danger of inconsistent results).

Therefore, Defendant's motion to stay pursuant to *Colorado River* is GRANTED.

**CONCLUSION**

For the reasons stated above, Defendant's motion to dismiss this case based upon a lack of subject matter jurisdiction is DENIED.  Defendant's motion to stay in light of parallel state action is GRANTED.  This case is stayed in its entirety pending resolution of the state proceedings, and the parties are directed to notify this Court of same.


Enter:
/s/ David H. Coar
_____
David H. Coar
United States District Judge

Dated: **May 13, 2008**

